UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BELMORA LLC,

        *Plaintiff,*

    v.

BAYER CONSUMER CARE AG and BAYER
HEALTHCARE LLC,

        *Defendants-Consolidated*
        *Plaintiffs,*

    v.

BELMORA, LLC, JAMIE BELCASTRO, and
DOES 1-10, inclusive,

        *Consolidated Defendants.*

Consolidated Civil Action No. 1:14-cv-847
ECF Case

**BELMORA'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
<u>BAYER CC AG AND BAYER HEALTHCARE'S COMPLAINT</u>**

**<u>TABLE OF AUTHORITIES</u>**

**Page**

**Cases**

*Ali v. Allergan USA, Inc.,*
 No. 12-cv-115, 2012 WL 3692396 (E.D. Va. Aug. 23, 2012) ................................ 22

*Almacenes Exito S.A. v. El Gallo Meat Market, Inc.,*
 381 F. Supp. 2d 324 (S.D.N.Y. 2005) ................................ 9, 11

*Animal Legal Defense Fund v. HVFG LLC,*
 No. 12-5809, 2013 WL 3242244 (N.D. Cal. June 25, 2013) ................................ 18

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................ 6

*Baden Sports, Inc. v. Molten USA, Inc.,*
 556 F.3d 1300 (Fed. Cir. 2009) ................................ 16

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,*
 330 F.3d 617 (4th Cir. 2003) ................................ 9, 11

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................ 6

*Bradley v. United States,*
 161 F.3d 777 (4th Cir. 1998) ................................ 23

*Brown v. Option One Mortg. Corp.,*
 No. 09-5705, 2010 WL 1267774 (N.D. Cal. April 1, 2010) ................................ 24

*CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.,*
 No. 93-1631, 1994 WL 1752376 (E.D. Va. 1994) ................................ 22, 23

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
 539 U.S. 23 (2003) ................................ 14

*Garcia v. Coleman,*
 No. 07-2279, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) ................................ 24

*Green Spot (Thailand) Ltd. v. Vitasoy Int'l Holdings Ltd.,*
 86 U.S.P.Q.2d 1283, 2008 WL 506192 (T.T.A.B. 2008) ................................ 17

*Grupo Gigante SA De CV v. Dallo & Co., Inc.,*
 391 F.3d 1088 (9th Cir. 2004) ................................ 18

*Harshbarger v. Philip Morris, Inc.,*
 No. 02-5267, 2003 WL 23342396 (N.D. Cal. April 1, 2003) ................................ 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ali v. Allergan USA, Inc.,*
No. 12-cv-115, 2012 WL 3692396 (E.D. Va. Aug. 23, 2012).............................22

*Almacenes Exito S.A. v. El Gallo Meat Market, Inc.,*
381 F. Supp. 2d 324 (S.D.N.Y. 2005) ..............................................9, 11

*Animal Legal Defense Fund v. HVFG LLC,*
No. 12-5809, 2013 WL 3242244 (N.D. Cal. June 25, 2013) .......................18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................6

*Baden Sports, Inc. v. Molten USA, Inc.,*
556 F.3d 1300 (Fed. Cir. 2009).........................................................16

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,*
330 F.3d 617 (4th Cir. 2003)........................................................9, 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................6

*Bradley v. United States,*
161 F.3d 777 (4th Cir. 1998).............................................................23

*Brown v. Option One Mortg. Corp.,*
No. 09-5705, 2010 WL 1267774 (N.D. Cal. April 1, 2010)........................24

*CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.,*
No. 93-1631, 1994 WL 1752376 (E.D. Va. 1994). .............................22, 23

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)......................................................................14

*Garcia v. Coleman,*
No. 07-2279, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) ......................24

*Green Spot (Thailand) Ltd. v. Vitasoy Int'l Holdings Ltd.,*
86 U.S.P.Q.2d 1283, 2008 WL 506192 (T.T.A.B. 2008) ..........................17

*Grupo Gigante SA De CV v. Dallo & Co., Inc.,*
391 F.3d 1088 (9th Cir. 2004)...........................................................18

*Harshbarger v. Philip Morris, Inc.,*
No. 02-5267, 2003 WL 23342396 (N.D. Cal. April 1, 2003).......................24

*In re Korean Air Lines Disaster of Sept. 1, 1983,*
  829 F.2d 1171 (D.C. Cir. 1987)............................................................23

*ITC Ltd. v. Punchgini, Inc.,*
  482 F.3d 135 (2d Cir. 2007).................................................9, 10, 11, 13

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.,*
  285 F.3d 848 (9th Cir. 2002)................................................................24

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)..........................................................7, 19

*Kramer v. Time Warner Inc.,*
  937 F.2d 767 (2d Cir. 1991)...........................................................20, 22

*Lamparello v. Falwell,*
  420 F.3d 309 (4th Cir. 2005)...............................................................10

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.,*
  214 Cal. App. 4th 544 (Cal. Ct. App. 2013). ......................................18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  134 S.Ct. 1377 (2014)..................................................................12, 13

*Maruti.com v. Maruit Udyog Ltd.,*
  447 F.Supp.2d 494 (D.Md. 2006).........................................................11

*Monsanto Co. v. Syngenta Seeds, Inc.,*
  443 F. Supp. 2d 648 (D.Del. 2006)......................................................16

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
  564 F. Supp. 2d 544 (E.D. Va. 2008) ..................................................13

*Nickelson v. United States,*
  103 Fed. App'x 739 (4th Cir. 2004) .....................................................22

*Painter v. Harvey,*
  863 F.2d 329 (4th Cir. 1988)..................................................................4

*PBM Prods., LLC v. Mead Johnson & Co.,*
  639 F.3d 111 (4th Cir. 2011)..........................................................22, 23

*Person's Co. v. Christman,*
  900 F.2d 1565 (Fed. Cir. 1990) ......................................................9, 17

*Playboy Enterp., Inc. v. Netscape Comm'ns Corp.,*
  354 F.3d 1020 (9th Cir. 2004).............................................................18

*Schreiber v. Dunabin*,
   938 F. Supp. 2d 587 (E.D. Va. 2013) ................................................................6, 9, 15, 19

*Scotts Co. v. United Indus. Corp.*,
   315 F.3d 264 (4th Cir. 2002) .................................................................................... 14

*Shonac Corp v. AMKO Int'l, Inc.*,
   763 F. Supp. 919 (S.D. Ohio 1991) ............................................................................ 8

*Smith v. Washington Suburban Sanitary Comm'n*,
   No. 12-0316, 2012 WL 4863399 (D.Md. Oct. 11, 2012) .......................................... 22

*Sweet Street Desserts, Inc. v. Better Bakery, LLC*,
   No. 12-6115, 2013 WL 81385 (E.D. Pa. Jan. 7, 2013) ............................................ 16

*Unlimited Screw Prods., Inc. v. Malm*,
   781 F. Supp. 1121 (E.D. Va. 1991) ..................................................................... 22, 23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................7, 19

**Statutes**

15 U.S.C. § 1071 ............................................................................................... 1, 3, 4, 17

15 U.S.C. § 1125(a) ............................................................................................. 5, 11, 14

15 U.S.C. § 1125(a)(1)(A) ......................................................................................... passim

15 U.S.C. § 1125(a)(1)(B) ......................................................................................... passim

15 U.S.C. § 1127 ............................................................................................................ 8, 10

28 U.S.C. § 1367(c) ........................................................................................................... 19

28 U.S.C. § 1404(a) .............................................................................................................. 4

Ca. Bus. & Profs. Code § 17200 *et seq.* ......................................................................... 5, 24

Ca. Bus. & Profs. Code § 17500 *et seq.* ......................................................................... 5, 24

Cal. Bus. & Profs. Code § 17208 ......................................................................................... 24

Cal. Code Civ. P. § 338(a) ................................................................................................... 24

Va. Code § 8.01-243(A) ...................................................................................................... 23

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition, § 27:21 (4th ed.) ....................... 8

Fed. R. Civ. P. 13(a) ................................................................................................4

Fed. R. Civ. P. 9(b) ...........................................................................................7, 19

Fed. R. Evid. 201 .............................................................................................7, 20

**INTRODUCTION**

Belmora LLC ("Belmora") has sold FLANAX brand naproxen sodium analgesics in the United States since 2004. It is the only user of the FLANAX mark in the United States. Bayer Consumer Care AG ("Bayer CC AG"), through predecessors in interest, has sold FLANAX brand naproxen sodium in Mexico since 1977, but has never sold or marketed this product in the United States. In an attempt to stop Belmora's sales, it now seeks to distort various provisions of the Lanham Act. Bayer CC AG and Bayer Healthcare LLC's ("Bayer Healthcare") Complaint misconstrues the plain language of 15 U.S.C. §§ 1071, 1125(a)(1)(A), and 1125(a)(1)(B).

Bayer CC AG and Bayer Healthcare have known of Belmora's trademark use since 2004 and of the alleged "misstatements" set forth in their Complaint since at least 2010. Yet, they waited until 2014 to file this action. Their lengthy delay confirms that they are not being irreparably harmed by Belmora and that the sole purpose of their Complaint is to drive Belmora—a single employee company—out of business. All of their claims are barred by the statute of limitations and should be dismissed.

Even if the claims were timely, Bayer CC AG and Bayer Heathcare's causes of action still should be dismissed. Bayer CC AG and Bayer Healthcare have not pled, and cannot properly plead false endorsement and false advertising claims under §§ 1125(a)(1)(A) and 1125(a)(1)(B). These bogus claims are a transparent attempt to circumvent the well-established doctrine that trademark law is territorial. That is, the Lanham Act protects United States trademark holders, not foreign trademark holders. Bayer CC AG and Bayer Healthcare cannot repackage an improper trademark infringement claim as a false endorsement or false advertising claim to obtain United States trademark protection for a Mexican trademark.

## BACKGROUND

### I.    Procedural Background

On October 6, 2003, Belmora filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the mark FLANAX for "Orally ingestible tablets of Naproxen Sodium for use as an analgesic," Application Serial No. 78/310,029 (the "'029 Application").  (*See* Dkt. 1 at ¶ 18, Ex. C at pgs. 15-16 (14-cv-4433 (C.D. Cal.)).)  In February 2004—after Belmora's trademark filing—Bayer CC AG filed an intent-to-use trademark application with the USPTO for the mark FLANAX for "analgesic preparation," Application Serial No. 78/375,157 (the "'157 Application").  Belmora's '029 Application was published for opposition on August 3, 2004.  Neither Bayer CC AG nor Bayer Healthcare filed an opposition.

On September 19, 2004, the USPTO issued a Notice of Suspension relating to Bayer CC AG's '157 Application, citing Belmora's earlier-filed '029 Application.  One month later, on November 11, 2004, Belmora filed its specimen of use with the USPTO, showing its product packaging and use of the FLANAX mark.  The USPTO issued a registration from Belmora's '029 Application on February 1, 2005, Registration No. 2924440.  (*See* Dkt. 1 at ¶ 18 (14-cv-4433 (C.D. Cal.)).)  Then, on May 16, 2005, the USPTO issued an Office Action rejecting Bayer CC AG's '157 Application based on Belmora's Registration No. 2924440.  Bayer CC AG did not respond to the USPTO's Office Action, and the USPTO subsequently deemed Bayer CC AG's '157 Application abandoned.

On June 29, 2007, three years after first being notified of Belmora's '029 Application, Bayer CC AG filed a Petition to Cancel Belmora's Registration No. 2924440 with the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB").  On April 17, 2014, the TTAB granted Bayer CC AG's petition to cancel Belmora's trademark Registration

No. 2924440 for the FLANAX mark. (*See* Dkt. 1 at Ex. C (14-cv-4433 (C.D. Cal.)).) The TTAB

based its decision solely on Section 14(3) of the Lanham Act, finding that there was evidence of

Belmora "invoking the reputation of [Bayer CC AG's] foreign product to sell [Belmora's] own

goods domestically under the same mark during the 2006-2009 time frame." (*Id.* at Ex. C pg.

30.)   The TTAB noted that there was "insufficient evidence" to conclude that any

misrepresentations in Belmora's marketing were made after 2009.   (*Id.*)   The TTAB rejected

three other claims, finding that Bayer CC AG had no trademark rights in the United States.

Pursuant to 15 U.S.C. § 1071, Belmora timely filed a Notice of Appeal to the United

States Court of Appeals for the Federal Circuit with the TTAB on June 3, 2014, opening a 20 day

window in which Bayer CC AG could either acquiesce in Belmora's selection of the Court of

Appeals for the Federal Circuit or choose to proceed before a district court of Belmora's

choosing.   Instead, on June 9, 2014, Bayer CC AG and Bayer Healthcare (collectively

"Defendants") filed a complaint in the United States District Court for the Central District of

California against Belmora, Jamie Belcastro (collectively "Plaintiffs"),[1] and Does 1-10, alleging

unfair competition and false advertising relating to Belmora's use of the FLANAX mark and the

marketing of Belmora's FLANAX products in the United States ("C.D. Cal. Action").[2]   (Dkt. 1

(14-cv-4433 (C.D. Cal.)).)   The California district court issued, *sua sponte*, an Order to Show

Cause on June 12, 2014, requesting that the parties "show cause … why this action should not be

---

[1] For ease of reference and to minimize confusion relating to the consolidated proceedings, Belmora and Mr. Belcastro will be referred to herein collectively as Plaintiffs. Similarly, Bayer CC AG and Bayer Healthcare will be referred to herein collectively as Defendants.

[2] Defendants first filed their Complaint in the Southern District of California on June 6, 2014 (*Bayer Consumer Care AG et al. v. Belmora LLC et al.*, No. 14-cv-01395 (S.D. Cal.), Dkt. 1). The next business day, they filed a Notice of Voluntary Dismissal without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A), stating that the "case was filed in the wrong district." *Id.* at Dkt. 5. That same day, Defendants refiled their Complaint in the Central District of California.

transferred to the United States District Court for the District of New Jersey, or, in the alternative, to the United States District Court for the Eastern District of Virginia, for the convenience of the parties and witnesses, and in the interests of justice. (Dkt. 15 (14-cv-4433 (C.D. Cal.)).) On June 13, 2014, Bayer CC AG filed a Notice of Election to Have Review by Civil Action with the TTAB.

Belmora and Mr. Belcastro responded to the Order to Show Cause on July 7, 2014, contending that Defendants were attempting to circumvent the statutory scheme of 15 U.S.C. § 1071[3] that applies to the review of TTAB decisions, and to shop for what they apparently thought to be a more favorable forum. (Dkt. 29 (14-cv-4433 (C.D. Cal.)).) Plaintiffs further argued that the Eastern District of Virginia was the proper forum for Defendants' C.D. Cal. Action because if there was to be a district court review of the TTAB decision, Belmora intended to exercise its statutory right to seek review in a district court of its choosing, namely, the Eastern District of Virginia. In accordance with § 1071, Belmora timely filed a complaint in the Eastern District of Virginia on July 8, 2014 seeking review of the TTAB decision and asserting various declaratory judgment causes of action relating to its trademark and trade dress. (Dkt. 1.)

Without needing to address Belmora's § 1071 argument, the California district court ordered that the C.D. Cal. Action be transferred to the Eastern District of Virginia under 28 U.S.C. § 1404(a) on July 11, 2014. (Dkt. 36 (14-cv-4433 (C.D. Cal.)).) A week later, on July 18, 2014, this court consolidated Bayer CC AG and Bayer Healthcare's C.D. Cal. Action with

---

[3] Because Belmora was the "dissatisfied party" in the TTAB proceeding and Bayer CC AG elected the district court, under § 1071, it was Belmora's statutory right to bring an appeal of the TTAB decision in a district court of its choosing. 15 U.S.C. § 1071. Because Defendants' claims in the C.D. Cal. Action arise from the same set of facts and transactions as the substance of the TTAB proceedings, they should have been brought as compulsory counterclaims to Belmora's E.D. Va. action. *See* Fed. R. Civ. P. 13(a); *Painter v. Harvey*, 863 F.2d 329, 331-32 (4th Cir. 1988). Instead, Defendants filed a preemptive complaint in C.D. Cal. in order to forum shop and avoid proceeding as proscribed by § 1071.

Belmora's pending E.D. Va. action.  (Dkt. 13.)  This court also ordered that all answers in the consolidated action be filed by August 7, 2014.  (Dkt. 14.)

## II.    Defendants' Complaint

Defendants allege five causes of action in their complaint:

(1) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I)[4];

(2) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II);

(3) unfair competition in violation of California Business & Professions Code § 17200 *et seq.* (Count III);

(4) false advertising in violation of California Business & Professions Code § 17500 *et seq.* (Count IV); and

(5) unfair competition in violation of California common law (Count V).

In **Count I**, Bayer CC AG alleges violations of both the false endorsement (§ 1125(a)(1)(A)) and the false advertising (§ 1125(a)(1)(B)) provisions of Section 43(a).  The allegations are based on Belmora and Mr. Belcastro's use of the FLANAX mark[5] and purportedly "deceptive marketing materials."  (Dkt. 1 at ¶¶ 49-52 (14-cv-4433 (C.D. Cal.)).)

In **Count II**, Bayer CC AG and Bayer Healthcare allege a violation of the false advertising (§ 1125(a)(1)(B)) provision of Section 43(a), which overlaps with Bayer CC AG's allegation in Count I.  The allegations are based on Belmora and Mr. Belcastro's use of the

---

[4] Defendants also improperly reference the false advertising portion of Section 43(a), 15 U.S.C. § 1125(a)(1)(B), in Count I.

[5] While some of Defendants' counts refer to Plaintiffs' use of the FLANAX mark, Defendants do not allege any specific violations based on Belmora's use of its trade dress.

FLANAX mark, marketing materials, and communications with distributors and potential distributors. (*Id.* at ¶¶ 53-59.)

In **Count III**, Bayer CC AG and Bayer Healthcare allege a violation of California unfair competition law based on Belmora and Mr. Belcastro purportedly "falsely represent[ing] that Belmora's FLANAX products are the same as the Mexican FLANAX products." (*Id.* at ¶¶ 60-64.)

In **Count IV**, Bayer CC AG and Bayer Healthcare allege that Belmora and Mr. Belcastro violated California false advertising law because their use of the FLANAX mark and marketing are allegedly "false and/or misleading statements of fact" and "misrepresentations." (*Id.* at ¶¶ 65-70.)

Finally, in **Count V**, Bayer CC AG and Bayer Healthcare allege a violation of California unfair competition common law based on unspecified "acts [that] constitute unfair competition" and "misappropriation." (*Id.* at ¶¶ 71-76.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement prevents "a plaintiff with 'a largely groundless claim' [from] 'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 558. "In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true." *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013). Besides the allegations in the complaint, "the court may also examine

6

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* Under Fed. R. Evid. 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."

For claims based in fraud, such as Defendants' California state and common law claims, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Any "[a]verment[] of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## ARGUMENT

Neither Bayer CC AG nor Bayer Healthcare has alleged ownership of any trademark right in, or use of, the mark FLANAX in the United States and thus neither is entitled to bring a claim for trademark infringement under the Lanham Act. Bayer CC AG and Bayer Healthcare's false endorsement and false advertising claims are, in essence, a backdoor attempt to sue Belmora and Mr. Belcastro for trademark infringement of Bayer CC AG's Mexican trademark. Defendants do not have a cause of action because they cannot establish ownership of a United States trademark. Additionally, Defendants' Complaint should be dismissed because their allegations are barred by the statute of limitations.

### I.   Bayer CC AG's Claims Under 15 U.S.C. § 1125(a)(1)(A) Should be Dismissed

Bayer CC AG has neither standing nor a cause of action to bring a claim under § 1125(a)(1)(A). 15 U.S.C. § 1125(a)(1)(A) is the false endorsement or false designation of source

section of the Lanham Act. It provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person *with another person*, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities *by another person* …
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added). The statute requires that the false or misleading statement must be likely to cause confusion or deceive as to affiliation, connection or association of the statement maker "with another person," or that the statement is likely to confuse or deceive as to origin, sponsorship or approval of the goods "by another person." The Lanham Act defines a "person" as "the applicant or other *entitled to a benefit or privilege* or rendered liable under the provisions of this chapter." 15 U.S.C. § 1127 (emphasis added). Thus, to state a claim for relief under § 1125(a)(1)(A), Bayer CC AG must be a "person" that is "entitled to a benefit or privilege" of the Lanham Act.

Courts interpret a "benefit" or "privilege" in this subsection as a cognizable interest relating to the trademark that is being infringed. 5 McCarthy on Trademarks and Unfair Competition, § 27:21 (4th ed.) ("[T]o have standing [under §43(a) of the Lanham Act], a nonowner must have some cognizable interest in the allegedly infringed trademark. … [W]here the subject matter of the § 43(a) claim is a trademark, the plaintiff 'must have some discernable interest in the mark' to have standing to sue. Because there was no nexus between plaintiff and the owners of the trademarks, plaintiff was held to have no standing to sue.") (citing *Shonac Corp v. AMKO Int'l, Inc.*, 763 F. Supp. 919, 931 (S.D. Ohio 1991)). As discussed below,

8

Mexican trademarks are not protected under Lanham Act, and thus Bayer CC AG having an interest in a foreign mark is insufficient to convey standing.

Belmora is not associating itself with a third-party United States trademark. Bayer CC AG does not have standing because it does not have a cognizable interest in a United States trademark. It follows that Bayer CC AG also does not have a cause of action because it does not own a United States trademark.

### A. Bayer CC AG Has Not Pled Ownership of Rights Under the Lanham Act

#### a)  Bayer CC AG's Mexican Trademark Rights are Not Enforceable Under the Lanham Act

According to the Fourth Circuit, it is clear "from the incorporation of the doctrine of territoriality into United States law through Section 44 of the Lanham Act that United States courts do not entertain actions seeking to enforce trademark rights that exist only under foreign law." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 628 (4th Cir. 2003); *see also Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("[F]oreign use has no effect on U.S. commerce … The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to the country's statutory scheme."); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007). That is, the Lanham Act protects only United States, and not foreign, trademark rights. *See Schreiber*, 938 F. Supp. 2d at 598-99 ("Plaintiff's use of *Landcruise* in Canada for over a decade does not create trademark rights in the United States because trademark rights exist independently in each country according to its own laws."); *Almacenes Exito S.A. v. El Gallo Meat Market, Inc.*, 381 F. Supp. 2d 324, 325-28 (S.D.N.Y. 2005) (dismissing a Colombian corporation's § 1125(a) claim relating to its foreign EXITO mark, which it alleged was known by a high percentage of the

Hispanic population in New York City, because it did not register or "use[] its mark either in New York or anywhere else in the United States").

Furthermore, to establish a claim for false designation of source or origin under § 1125(a)(1)(A), a party must prove:

> (1) *that it possesses a mark*; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred in commerce; (4) that the [opposing party] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (emphasis added).

The TTAB here found that Bayer CC AG does not own a United States trademark for the FLANAX mark and does not sell any product under the FLANAX name in the United States. (*See* Dkt. 1 at Ex. C pg. 2 n.3 & pg. 17 (14-cv-4433 (C.D. Cal.)) ("[Bayer CC AG] has not used the FLANAX mark in the United States. ... [Bayer CC AG's] FLANAX analgesic is not sold in the United States.").) Indeed, Bayer CC AG does not allege that it owns any United States trademark. Bayer CC AG also does not allege that it has ever advertised or sold its Mexican FLANAX products in the United States. (*See* Dkt. 1 at ¶¶ 9-13 (14-cv-4433 (C.D. Cal.)).) Rather, it alleges that it owns a *Mexican* trademark registration and has sold and advertised its *Mexican FLANAX products in Mexico*. (*Id.*) Because Bayer CC AG does not have any protectable right under the Lanham Act, it is not entitled to any benefit or privilege of the Act, and thus is not a "person" within the meaning of §§ 1125(a)(1)(A) and 1127. Therefore, Bayer CC AG does not have a cause of action because it cannot satisfy all of the elements of a § 1125(a)(1)(A) claim.

In *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 143-44 (2d Cir. 2007), the plaintiff—who owned a restaurant in India named Bukhara—alleged unfair competition against a former

employee who opened a restaurant in New York City called Bukhara Grill.  The Second Circuit affirmed the grant of summary judgment in the defendant's favor with respect to the unfair competition under § 1125(a)(1)(A) because plaintiff's foreign use did not convey to it any protectable right under the Lanham Act.  *Id.* at 153-165.  The court explained that without the foreign mark holder using the mark in the United States, it could "not assert priority rights under federal law, even if a United States competitor has knowingly appropriated that mark for his own use." *Id.* at 156.

Bayer CC AG appears to allege that it has a cause of action because its Mexican FLANAX product is "extremely well known … to Mexican-American consumers in the United States." (*See* Dkt. 1 at ¶¶ 9-13 (14-cv-4433 (C.D. Cal.)).)  Although not specifically cited, Plaintiffs interpret these allegations to mean that Bayer CC AG wishes to invoke the controversial "famous mark doctrine."  This doctrine, however, is not accepted and is not the law in the Fourth Circuit.  *See Barcelona.com*, 330 F.3d at 628; *Maruti.com v. Maruit Udyog Ltd.*, 447 F.Supp.2d 494, 500 (D.Md. 2006) ("This Court will decline to apply the famous marks doctrine to the instant case.  The Court reaches this decision after considering several factors.  First, the Fourth Circuit has never recognized the doctrine."); *see also Almacenes*, 381 F. Supp. 2d at 325-28 (rejecting foreign mark holder's § 1125(a) because it did not use the mark in the United States even though it alleged that its mark was well known to Hispanic consumers in the United States).

The Complaint alleges a violation of § 1125(a)(1)(A) only with respect to Bayer CC AG.  To the extent Defendants intend to argue that this cause of action is also related to Bayer Healthcare, it should be dismissed.  There are no allegations that there is confusion or deception as to the affiliation, connection, or association of Belmora with Bayer Healthcare.

11

## II.   Defendants' Claims Under 15 U.S.C. § 1125(a)(1)(B) Should be Dismissed

15 U.S.C. § 1125(a)(1)(B) is the false advertising section of the Lanham Act.  It provides

that:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact which …
>
>> (B) in commercial advertising or promotion, misrepresents *the nature,
>> characteristics, qualities, or geographic origin* of his or her or another
>> person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).   Section 1125(a)(1)(B) differs from section

1125(a)(1)(A) because, instead of dealing with false affiliation or false connection between the

person making the statement and another person, section 1125(a)(1)(B) concerns the misleading

representation of fact regarding "nature, characteristics, qualities, or geographic origin of his or

her or another person's goods." *See e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

134 S.Ct. 1377, 1384 (2014) ("Section 1125(a) … creates two distinct bases of liability: false

association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

### A. Bayer CC AG Has Not Pled a Cause of Action Under 15 U.S.C. § 1125(a)(1)(B)

#### a)   Bayer CC AG Has Not Pled Ownership, Let Alone Injury to, a Commercial Interest

While Defendants allege that "Belmora's FLANAX analgesics compete directly with

Bayer Healthcare's ALEVE analgesics," they do not allege any injury to a commercial interest of

Bayer CC AG's sales or business reputation that is proximately caused by the alleged

misrepresentations.[6]  *See* Dkt. 1 at ¶ 20 (14-cv-4433 (C.D. Cal.)); *Lexmark*, 134 S.Ct. at 1395;

*see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 551 (E.D. Va.

2008) ("The Court finds that Plaintiffs lack standing to bring Counts III (unfair competition) and

IV (false advertising) because regardless of which approach the Court takes to the issue of

standing, the fact that the parties are not competitors and that this claim is not within the type of

injury that the Lanham Act seeks to prevent, precludes Plaintiffs from bringing their claims.").

In *Punchgini*, the Second Circuit rejected a similar claim.  As discussed above, the

plaintiff in *Punchgini* owned a restaurant in India called Bukhara.  *Punchgini*, 482 F.3d at 143-

44.  The plaintiff alleged that the defendant falsely advertised its restaurant in violation of §

1125(a)(1)(B) because it "implied some affiliation between" defendant and plaintiff.  *Id.* at 169.

The court found that the plaintiff lacked standing because it did not have "a reasonable interest to

be protected against the advertiser's false or misleading claims" in the United States (*e.g.*

commercial or direct pecuniary interests) and "did not have a reasonable basis for believing that

this interest is likely to be damaged by the false or misleading advertising" (*e.g.* nexus between a

likely injury and the false advertising).  *Id.* at 170.  The court rejected the plaintiff's argument

that it had standing to sue based on potential injury to its Bukhara restaurants outside of the

United States.  *Id.* at 171.

Furthermore, to the extent Bayer CC AG could have a cause of action under §

1125(a)(1)(B), such a claim is insufficiently pled.  Defendants mechanically recite the language

---

[6] While the Complaint does contain an allegation that Belmora allegedly "usurp[s]" Bayer CC
AG's "goodwill" (Dkt. 1 at ¶ 57 (14-cv-4433 (C.D. Cal.))), this is insufficient to create standing
under this count.  As discussed below in Section II.B, usurpation of goodwill is an infringement
concept, not a false advertising concept.  Furthermore, if Bayer CC AG does own goodwill, such
goodwill does not exist in the United States and thus cannot be a United States commercial
interest.

13

of the statute relating to false advertising in Counts I and II,[7] but as discussed below, do not allege that the statement "misrepresents *the nature, characteristics, qualities, or geographic origin*" as required by § 1125(a)(1)(B). 15 U.S.C. § 1125(a)(1)(B) (emphasis added).

### B. Bayer Healthcare Fails to State a Claim Under § 1125(a)(1)(B) Because its Allegations do not Relate to False or Misleading Statements of "Nature, Characteristics, Qualities, or Geographic Origin"

No alleged misstatement referred to in Defendants' Complaint can be read as referring to the "nature, characteristics, qualities, or geographic origin" of a product. Thus, Bayer Healthcare fails to state a claim under § 1125(a)(1)(B) because it does not allege any of the specific false advertising practices prohibited by the statute. The Supreme Court recognized that Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "does not have boundless application as a remedy for unfair trade practices." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (citation omitted). Furthermore, "because of its inherently limiting wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,' but *can apply only to certain unfair trade practices prohibited by its text*." *Id.* (internal citation omitted; emphasis added).

Despite Defendants' allegations nominally being brought under two different provisions of § 1125(a), all of their Lanham Act claims are, by their own description, based solely on false endorsement, which is not the subject of § 1125(a)(1)(B). Because Bayer Healthcare cannot

---

[7] To survive a motion to dismiss, a claim for false advertising under the Lanham Act must allege that: "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by lessening of goodwill associated with its products." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

bring a claim under § 1125(a)(1)(A), as discussed *supra*, it is attempting to shoehorn the same allegations relating to false endorsement into a § 1125(a)(1)(B) claim.   According to the Complaint, Belmora and Mr. Belcastro's marketing materials allegedly "cause consumers to believe that Belmora's FLANAX products are or are related to [Bayer CC AG's Mexican] FLANAX analgesics."   (*See* Dkt. 1 at ¶¶ 30-39 (14-cv-4433 (C.D. Cal.)).)   Although mechanically reciting the language of § 1125(a)(1)(B) in Counts I and II,[8] the Complaint does not contain any allegations that Belmora or Mr. Belcastro misrepresented in "commercial advertising or promotion … the nature, characteristics, qualities, or geographic origin of [their] or another person's goods."   Indeed, Count II—which Defendants identify as the "False Advertising" cause of action—merely alleges that Plaintiffs' "claims in their marketing materials and communications with distributors and potential distributors that Belmora's FLANAX products are the same as [Bayer CC AG's Mexican] FLANAX products, as well as [Belmora and Mr. Belcastro's] use of the FLANAX mark for naproxen sodium products … are false and/or misleading statements of fact."   (*Id.* at ¶ 54.)   Plaintiffs' use of the phrases "that Belmora's FLANAX products *are the same as* [Bayer CC AG's Mexican] FLANAX product" and "Defendants' Claims have been with the intent to *usurp* [Bayer CC AG's] *goodwill*" (*id.* at ¶¶ 54, 57 (emphasis added)) in Count II confirm that their false advertising claim does not relate to misrepresentations of "nature, characteristics, qualities, or geographic origin," as required by § 1125(a)(1)(B).   Such allegations relate to a false endorsement theory under § 1125(a)(1)(A), and as discussed above, neither Bayer CC AG nor Bayer Healthcare can bring such a claim.

Bayer CC AG and Bayer Healthcare's allegations relating to § 1125(a)(1)(B) are similar

---

[8] Defendants allege portions of their § 1125(a)(1)(B) claim in both Counts I (¶ 51) and II (¶¶ 53-59).   Reading the Complaint as a whole and in the light most favorable to Defendants (*Schreiber*, 938 F. Supp. 2d at 594), Plaintiffs interpret ¶ 51 of the pleading as being a part of Count II.

to the allegations rejected in *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1305-08 (Fed. Cir. 2009).  In *Baden*, the plaintiff patented a technology relating to inflatable sports balls. *Id.* at 1302.  Because its claims were barred under § 1125(a)(1)(A), the plaintiff alleged that the defendant violated § 1125(a)(1)(B) by suggesting in its advertisements that the defendant, rather than the plaintiff, was the innovator of the inflatable sports ball technology. *Id.* at 1306-08.  The Federal Circuit found that the plaintiff's allegations were not actionable under § 1125(a)(1)(B) because they related to authorship, and therefore "do not go to the 'nature, characteristics [or] qualities' of the goods." *Id.* ("No physical or functional attributes of the basketballs are implied by [plaintiff's] advertisements. ... [Plaintiffs are] framing a claim based on false attribution of authorship as a misrepresentation of the nature, characteristics, and qualities of goods.").

Other courts have likewise dismissed these kinds of improper false advertising claims. *See, e.g., Sweet Street Desserts, Inc. v. Better Bakery, LLC*, No. 12-6115, 2013 WL 81385, at *4 (E.D. Pa. Jan. 7, 2013) (dismissing false advertising claim brought under § 1125(a)(1)(B) "because authorship is not a nature, characteristic, or quality"); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 652-53 (D.Del. 2006) ("Under *Dastar*, a false advertising claim that merely rephrases a reverse passing off claim is barred. ... Under the reasoning in *Dastar* and the analysis above, the statement that [defendant] is the origin of the seed sold is not a false advertising claim.").

## III. Belmora's Use of the FLANAX Mark in the United States is not *Per Se* Actionable by Defendants

Belmora owns a registration from the United States Patent and Trademark Office for the mark FLANAX for "Orally ingestible tablets of Naproxen Sodium for use as an analgesic." (*See* Dkt. 1 at ¶ 18 (14-cv-4433 (C.D. Cal.)).)  Plaintiffs sell products in the United States under the FLANAX brand name and use the FLANAX mark to refer to their own products. (*See id.* at Ex.

16

C pgs. 15-16.) Defendants allege that the mere use of the FLANAX mark by Plaintiffs is unfair competition and false advertising, and thus should be enjoined and subject to monetary damages. But there is nothing unfair, misleading or false about Belmora using its own trademark. Whether Belmora was aware of Bayer CC AG's use in Mexico is of no moment. *See Green Spot (Thailand) Ltd. v. Vitasoy Int'l Holdings Ltd.*, 86 U.S.P.Q.2d 1283, 2008 WL 506192, at *2 n.4 (T.T.A.B. 2008); *Person's*, 900 F.2d at 1570. And, the TTAB decision attached as Exhibit C to Defendants' Complaint only relates to Belmora's registration of the FLANAX mark, not Belmora's use of the FLANAX mark.

The only statements and acts that Defendants complain of relating to the use of the FLANAX mark involve use of the mark in conjunction with other things, such as packaging that is allegedly similar to Bayer CC AG's predecessor's packaging and marketing material that purportedly suggests that Belmora and Bayer CC AG or its predecessor are the same company. Defendants do not allege that Belmora's use of the mark itself in isolation is false, or misleading, or causes confusion, or harms Defendants in any way. Belmora has been using the FLANAX mark—and Defendants have known of such use—*since 2004*. Yet, Defendants waited ten years to bring these claims. If Defendants were really being harmed by Belmora's mere use of the FLANAX mark (or its packaging), they would have filed this litigation much sooner. This belated filing confirms Defendants' intent to frustrate the statutory scheme of § 1071. Thus, Defendants' claims relating to the use of the FLANAX mark alone, or in ways that do not constitute unfair competition or false advertising, and any prayers for relief requesting damages or an injunction based on this should be dismissed.

**IV.    Defendants' California Claims Should be Dismissed**

By disregarding 15 U.S.C. § 1071 and its appeal scheme, Bayer CC AG and Bayer

17

Healthcare have attempted to scotch-tape California causes of action onto this Virginia action. These claims are improper and duplicative of their Lanham Act claims. They should be dismissed.

### A. Bayer CC AG Has No Standing to Bring California Claims

As an initial matter, Bayer CC AG is a Swiss corporation and the Complaint alleges only that Bayer CC AG advertises and sells products *in Mexico*. (Dkt. 1 at ¶¶ 1, 9-13 (14-cv-4433 (C.D. Cal.)).) Because Bayer CC AG has not alleged that it sells products in California or competes with Plaintiffs, it lacks standing to bring California state and common law claims. As explained by the California Court of Appeals, the California Unfair Competition Law "was originally conceived to protect business competitors." *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 547 (Cal. Ct. App. 2013). While the plaintiff does not need to have direct business dealings with the defendant, the parties still need to be competitors and the plaintiff must suffer an "injury in fact and lost money or property as a result of the defendant competitor's unfair competition." *Id.; see also Animal Legal Defense Fund v. HVFG LLC*, No. 12-5809, 2013 WL 3242244, at *3 (N.D. Cal. June 25, 2013) (applying the same standing analysis for claims under Sections 17200 and 17500).

According to the Ninth Circuit, "California trademark law claims are 'substantially congruent'" with federal Lanham Act claims. *Playboy Enterp., Inc. v. Netscape Comm'ns Corp.*, 354 F.3d 1020, 1024 n.10 (9th Cir. 2004). Under California state law, use in a foreign country is insufficient to establish United States trademark priority. *See Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100-01 (9th Cir. 2004). Because there is no "famous mark" exception to the doctrine of territoriality under California state law, Bayer CC AG cannot assert that it has any protectable United States trademark rights.

18

### B. Defendants' California Claims Should Be Dismissed Because their Lanham Act Claims Should be Dismissed

To the extent the court dismisses Defendants' Lanham Act claims, it should exercise its discretion to dismiss Defendants' California claims under 28 U.S.C. § 1367(c). *See Schreiber*, 938 F. Supp. 2d at 601 ("[B]ecause the Court has dismissed all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims."). And as discussed below, all of Defendants' claims are barred by the statute of limitations. *See* Section V.

### C. Defendants' California Claims Fail to Satisfy the Heightened Pleading Standard of Rule 9(b)

Furthermore, Defendants' state law claims should be dismissed because they are not adequately pled. Under California law, the heightened pleading standard of Rule 9(b) applies to California unfair competition and false advertising claims. *Kearns*, 567 F.3d at 1125. Therefore, Defendants are required to plead "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. While Defendants allege that Exhibit B was "developed in 2007," they do not allege the "when" with respect to any of their other allegations. (*See, e.g.* Dkt. 1 at ¶¶ 30-37 (14-cv-4433 (C.D. Cal.)).) With respect to Exhibit A, Defendants do not allege any pertinent aspect of this document, let alone that it was ever distributed. (*Id.* at ¶ 31.) Furthermore, Defendants' Complaint contains vague allegations, such as "Defendants made similarly misleading claims directly to distributors and potential distributors" that fail to identify what was misleading. (*Id.* at ¶ 34.) Defendants' allegations fail to satisfy the heightened pleading standard of Rule 9(b).

## V.   All of Defendants' Claims are Barred by the Applicable Statute of Limitations

Bayer CC AG and Bayer Healthcare learned of Belmora's United States trademark

application for the FLANAX mark no later than September 19, 2004 when Bayer CC AG received the Notice of Suspension from the USPTO with regard to its own trademark application. *See supra* Procedural Background Section. They learned of Belmora's packaging no later than November 2004 when Belmora filed its specimen of use with the USPTO. *Id.* In seeking to enjoin Belmora's use of the FLANAX mark and its packaging, Bayer CC AG and Bayer Healthcare are asking this court to prohibit behavior that they have known of for ten years.[9]

In their Complaint, Bayer CC AG and Bayer Healthcare do not allege that *any* of the complained of acts occurred after 2009. (*See* Dkt. 1 at ¶¶ 30-37 (14-cv-4433 (C.D. Cal.)).) Bayer CC AG and Bayer Healthcare have no excuse for waiting until 2014 to bring this lawsuit. Besides knowing of Belmora's use of the FLANAX mark and its packaging in 2004, information relating to all of the acts complained of by Defendants was produced by Belmora to Bayer CC AG in the TTAB proceedings.[10] According to the TTAB decision attached to Defendants'

---

[9] The court may take judicial notice of the public records of the United States Patent and Trademark Office that show (1) that Bayer CC AG received a Notice of Suspension on September 19, 2004 based on Belmora's Application No. 78/310.029 for the FLANAX mark; (2) that Bayer CC AG's Application No. 78/375,157 was rejected on May 16, 2005 based on Belmora's Registration No. 2924440 for the FLANAX mark; and (3) Belmora filed a specimen of use with the USPTO showing its packaging and use of the FLANAX mark on November 11, 2004. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201. No serious question as to the authenticity of these documents or facts exists.

[10] Defendants' Lanham Act claims are based on the following: (1) Plaintiffs' use of the FLANAX mark in the United States; (2) Exhibit A to the Complaint, referred to by Defendants as an "early Belmora marketing piece"; (3) Exhibit B to the Complaint, cited by Defendants as being from 2007; (4) Plaintiffs' use of telemarketers that "read a script which suggested that Belmora's FLANAX products were the same as the FLANAX products sold in Mexico"; and (5) that Plaintiffs "made similarly misleading claims directly to distributors and potential distributors of Belmora's FLANAX products." (*See* Dkt. 1 at ¶¶ 21-26, 31-34 (14-cv-4433 (C.D. Cal.)).) Defendants contend that they uncovered this evidence during discovery in the TTAB proceedings—which ended in February 2011. (*Id.* at ¶ 41 & Ex. C pg. 9.) As discussed above, Plaintiffs' mere use of the FLANAX mark in the United States is not actionable. And, although

20

Complaint as Exhibit C, this evidence showed allegedly misleading marketing only during the period of 2006 to 2009.  (*See* Dkt. 1 at Ex. C. pg. 30 (14-cv-4433 (C.D. Cal.)).)  The only allegation that Defendants specifically date relates to Exhibit B, which they allege is from 2007. (*Id.* at ¶ 32.)  Defendants claim Exhibit A is an "early Belmora marketing piece." (*Id.* at ¶ 31.) They do not provide dates with respect to the telemarketer "script" or the vague allegation that Belmora made "similarly misleading claims directly to distributors and potential distributors." (*Id.* at ¶¶ 33-34.)

Defendants' counsel specifically knew about the documents and statements discussed in Defendants' Complaint ***no later than July 8, 2010***, and potentially in April 2010 or earlier.[11] Confirming this fact, in its TTAB summary judgment opposition filed on July 21, 2010, Bayer CC AG relied on much of the same information that is the subject of Defendants' Complaint. *See Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 92047741 (Dkt. 54 & 55 at 3, 5, 7-9, 15, Ex. 9 (discussing similar information as that referenced in the Complaint and other alleged misrepresentations, including emails from Mr. Belcastro to potential distributors and telemarketing scripts)).

---

Defendants' Complaint references Belmora's product packaging, their counts to not refer to any specific violations based on Belmora's use of its trade dress.

[11] Both Exhibits A and B of the Complaint contain bates numbers with the prefix "BEL," designating that they were produced by Belmora during the TTAB proceedings. In April 2010, Belmora provided Bayer CC AG with access to a set of documents that had been recovered from a Belmora computer, which included the information that is at issue in Defendants' Complaint, and attorney correspondence indicates that Defendants' counsel was reviewing this information by early May 2010. The July 21, 2010 Declaration of Scott Lonardo (an attorney with the law firm of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP), which was filed publicly with the TTAB, confirms that Defendants' counsel reviewed all of the information relevant to the present Complaint at least by June 16, 2010. *See Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 92047741 (Dkt. 54 at Lonardo Decl. at Lonardo Decl. ¶¶ 2-3).  By July 8, 2010, Defendants' counsel had in its possession documents bates stamped BEL02000-BEL05500, which included Exhibit A (BEL04014) and Exhibit B (BEL02004) to the Complaint. (*Id.* at ¶ 4.)  This court should take judicial notice of the publicly available Lonardo Declaration.

Defendants' Complaint contains a section titled "Prior Cancellation Action," which discusses the cancellation action instituted by Bayer CC AG with the TTAB. The court may take judicial notice of the publicly available TTAB decisions and party filings. *See e.g., Kramer*, 937 F.2d at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted ... but rather to establish the fact of such litigation and related filings."); *Nickelson v. United States*, 103 Fed. App'x 739, 739 (4th Cir. 2004) (granting motion "to take judicial notice of statutes and administrative materials"); *Ali v. Allergan USA, Inc.*, No. 12-cv-115, 2012 WL 3692396, at *1 (E.D. Va. Aug. 23, 2012) (taking judicial notice of documents issued by the United States Food and Drug Administration and Department of Health and Human Services); *Smith v. Washington Suburban Sanitary Comm'n*, No. 12-0316, 2012 WL 4863399, at *4 n.4 (D.Md. Oct. 11, 2012) (taking judicial notice of a decision from an administrative body).

Because each statute of limitations begins to run when the cause of action accrued, all of Defendants' claims are time-barred.

### A. Defendants' Lanham Act Claims are Barred by Virginia's Two-Year Statute of Limitations

Because the Lanham Act does not have its own statute of limitations, courts must use an analogous state limitations period. *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011). Under Virginia law, claims under section 43(a) of the Lanham Act are most analogous to fraud claims. *Id.*; *Unlimited Screw Prods., Inc. v. Malm*, 781 F. Supp. 1121, 1125-26 (E.D. Va. 1991); *CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.*, No. 93-1631, 1994 WL 1752376, at *5 (E.D. Va. 1994). Thus, the applicable statute of limitations for Defendants'

Lanham Act claims is two years from the date the cause of action accrued. *See Id.*; Va. Code § 8.01-243(A).[12]

Defendants do not allege that *any* of the complained of acts accrued after 2009, let alone within the two year statute of limitations period. Tellingly, Defendants' descriptions of the allegedly deceptive marketing are all referred to in the past tense: Plaintiffs "have marketed"; "One early Belmora marketing piece … stated"; "Another marketing piece, developed in 2007 … proclaimed"; Plaintiffs "sent this brochure to thousands of distributors and potential distributors"; Plaintiffs "hired telemarketers to call potential distributors and read a script"; and Plaintiffs "made similarly misleading claims." (*See* Dkt. 1 at ¶¶ 30-34 (14-cv-4433 (C.D. Cal.)).)

Nor could Defendants have a good faith belief that their complained of acts accrued after 2009 based on the TTAB's finding that the allegedly deceptive conduct occurred only between 2006 and 2009—which is contained in Exhibit C to Defendants' Complaint. (*See* Dkt. 1 at Ex. C pg. 30 (14-cv-4433 (C.D. Cal.)).) Furthermore, Defendants' Complaint is based exclusively on information that was in its possession by 2010, which places Defendants' discovery date still years outside of Virginia's two year statute of limitations period. There are no allegations that Defendants are relying on any new information that they discovered after the TTAB proceedings. Therefore, under either a discovery or accrual theory, Defendants' Lanham Act claims should be dismissed.

---

[12] Virginia law applies to Bayer CC AG and Bayer Healthcare's federal claims. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1173-76 (D.C. Cir. 1987); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *Key v. Robertson*, No. 2:08cv174, 2009 WL 5942664, at *5 & n.3 (E.D. Va. Feb. 23, 2009) ("It appears clear that this court must look to its own Circuit's precedent, and not that of the transferor court's Circuit, in evaluating these claims.").

### B. Defendants' California State and Common Law Claims are Barred by California's Statute of Limitations

Defendants' California claims are similarly barred by the statute of limitations.  Claims under California Business and Professions Code § 17200 *et seq.* and § 17500 *et seq.* are subject to either a three or four-year statute of limitations, which begins to run on the date the cause of action accrued.  *See Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (applying four-year statute of limitations to § 17200 claim); Cal. Bus. & Profs. Code § 17208; *Brown v. Option One Mortg. Corp.*, No. 09-5705, 2010 WL 1267774, at *3 (N.D. Cal. April 1, 2010) (applying a three-year statute of limitations to § 17200 and § 17500 claims because the complaint was based solely on advertising allegations); *Harshbarger v. Philip Morris, Inc.*, No. 02-5267, 2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003) (explaining that California courts are split on whether to apply a three or four-year statute of limitations to § 17500 claims); Cal. Code Civ. P. § 338(a).  Under either a three-year or four-year statute of limitations, Defendants' claims are barred.  Defendants do not allege that any of the "misrepresentations" or "false and/or misleading statements of fact" that form the bases of their Complaint occurred after 2009. (*See* Dkt. 1 at ¶¶ 30-36, 60-70 (14-cv-4433 (C.D. Cal.)).)

Defendants' common law unfair competition claim is similarly barred because it relates to misappropriation and is thus subject to a two-year statute of limitations.  *See Garcia v. Coleman*, No. 07-2279, 2008 WL 4166854, at *9 & n. 4 (N.D. Cal. Sept. 8, 2008).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court dismiss Defendants' Complaint in its entirety, with prejudice.

Respectfully submitted,

24

Dated: August 7, 2014                              _____/s/_____
                                                   John N. Jennison (VSB No. 36,824)
                                                   JENNISON & SHULTZ, P.C.
                                                   2001 Jefferson Davis Highway, Suite 1102
                                                   Arlington, Virginia 22202-3604
                                                   Phone: (703) 415-1640
                                                   Fax: (703) 415-0788
                                                   John@JennisonLaw.com

                                                   Martin B. Schwimmer (admitted *pro hac vice*)
                                                   Lauren B. Sabol (admitted *pro hac vice*)
                                                   LEASON ELLIS LLP
                                                   One Barker Avenue, Fifth Floor
                                                   White Plains, NY 10601
                                                   Tel: (914) 288-0022
                                                   Fax: (914) 288-0023
                                                   schwimmer@leasonellis.com
                                                   sabol@leasonellis.com

                                                   John L. Welch (admitted *pro hac vice*)
                                                   LANDO & ANASTASI, LLP
                                                   One Main Street, 11th Floor
                                                   Cambridge, MA 02142
                                                   Tel: (617) 395-7000
                                                   Fax: (617) 395-7070
                                                   jwelch@lalaw.com

                                                   *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2014, I will file the foregoing **BELMORA'S**

**MEMORANDUM IN SUPPORT OF ITS MOTIONS TO DISMISS BAYER CC AG AND**

**BAYER HEALTHCARE'S COMPLAINT** with the Clerk of Court, using the CM/ECF system,

which will then send notification of such filing to the following counsel for Bayer Consumer Care

AG and Bayer Healthcare LLC:

Phillip Barengolts
PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP
pbarengolts@pattishall.com
200 S. Wacker Drive, Suite 2900
Chicago, IL 60606

Robert J. Shaughnessy
bshaughnessy@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

                                               /s/
                              John N. Jennison (VSB No. 36,824)
                              JENNISON & SHULTZ, P.C.
                              2001 Jefferson Davis Highway, Suite 1102
                              Arlington, Virginia 22202-3604
                              Phone: (703) 415-1640
                              Fax: (703) 415-0788
                              John@JennisonLaw.com