# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| BELMORA LLC,<br><br>   *Plaintiff,*<br><br> v.<br><br>BAYER CONSUMER CARE AG and BAYER HEALTHCARE LLC,<br><br>   *Defendants-Consolidated*<br>   *Plaintiffs,*<br><br> v.<br><br>BELMORA, LLC, JAMIE BELCASTRO, and DOES 1-10, inclusive,<br><br>   *Consolidated Defendants.* | Consolidated Civil Action No. 1:14-cv-847<br>ECF Case |

## BELMORA'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS BAYER CC AG's COUNTERCLAIM

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

    I.    Procedural Background ................................................................................... 2

    II.    Bayer AG CC's Counterclaim ...................................................................... 4

LEGAL STANDARD ..................................................................................................... 4

    I.    Motion to Dismiss ......................................................................................... 4

    II.    Article *6bis* of the Paris Convention ............................................................ 5

    III.    Sections 44(b) And (h) Of The Lanham Act, 15 U.S.C. §§ 1126(b) And (h)................. 5

ARGUMENT ................................................................................................................... 6

    I.    Bayer CC AG's Counterclaim Should Be Dismissed Because There Is No Cause Of Action Under Article *6bis* Of The Paris Convention ...................... 6

        A.    Article *6bis* Of The Paris Convention Is Not Self-Executing ...................... 6

        B.    Every Circuit Court To Consider The Issue Has Found That Sections 44(b) And (h) Of The Lanham Act Do Not Make Article *6bis* Of The Paris Convention "Applicable" ... 8

        C.    Congress Amends The Lanham Act When It Creates New Grounds To Cancel Registrations................................................................................. 12

    II.    Bayer CC AG Has Not, And Cannot, Properly Plead Priority Or The Requisite Level Of Fame Prior To 2003 ....................................................... 12

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Almacenes Exito S.A. v. El Gallo Meat Market, Inc.,*
381 F. Supp. 2d 324 (S.D.N.Y. 2005) ................................................................ 7, 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 4

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,*
330 F.3d 617 (4th Cir. 2003) ........................................................................... 8

*Bayer Consumer Care AG v. Belmora LLC,*
Cancellation No. 92047741 ................................................................ 11, 12, 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................. 4, 14

*Chanel, Inc. v. Jerzy Makarczyk,*
110 U.S.P.Q.2d 2013 (TTAB May 27, 2014) .................................................. 13

*Field of Screams, LLC v. Olney Boys and Girls Community Sports Ass'n,*
No. 10-327, 2011 WL 890501 (D.Md. Mar. 14, 2011) ..................................... 14

*Grupo Gigante SA De CV v. Dallo & Co., Inc.,*
391 F.3d 1088 (9th Cir. 2004) ..................................................................... 9, 10

*Halbig v. Burwell,*
No. 14-5018, 2014 WL 3579745 (D.C. Cir. July 22, 2014) ............................. 11

*In re Rath,*
402 F.3d 1207 (Fed. Cir. 2005) .................................................................... 3, 6

*In re The Government of the District of Columbia,*
2012 WL 423804, 101 U.S.P.Q.2d 1588 (TTAB Jan. 18, 2012) ....................... 7

*Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.,*
252 F.3d 1274 (11th Cir. 2001) ....................................................................... 9

*Int'l Finance Corp. v. Bravo Co.,*
2002 WL 1258278, 64 U.S.P.Q.2d 1597 (TTAB June 5, 2002) ........................ 6

*ITC Ltd. v. Punchgini, Inc.,*
482 F.3d 135 (2d Cir. 2007) ................................................................... 8, 9, 10

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,*
   507 F.3d 252 (4th Cir. 2007) ................................................................................. 13

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.,*
   841 F. Supp. 2d 753 (S.D.N.Y. 2012) ..................................................................... 15

*Maruti.com v. Maruti Udyog Ltd.,*
   447 F. Supp. 2d 494 (D.Md. 2006) ........................................................................... 8

*Person's Co. v. Christman,*
   900 F.2d 1565 (Fed. Cir. 1990) .............................................................................. 15

*Rosenruist-Gestao E Servicos LDA v. Virgin Enterp. Ltd.,*
   511 F.3d 437 (4th Cir. 2007) ................................................................................... 8

*Rosetta Stone Ltd. v. Google, Inc.,*
   676 F.3d 144 (4th Cir. 2012) ................................................................................. 13

*Schreiber v. Dunabin,*
   938 F. Supp. 2d 587 (E.D. Va. 2013) ....................................................................... 4

*Scimed Life Sys., Inc. v. Medtronic Vascular, Inc.,*
   468 F. Supp. 2d 60 (D.D.C. 2006) ........................................................................... 7

*Scotch Whisky Ass'n v. Majestic Distilling Co.,*
   958 F.2d 594 (4th Cir. 1992) ............................................................................... 6, 8

**Statutes**

15 U.S.C. § 1052 ........................................................................................................ 2, 3

15 U.S.C. § 1063 .......................................................................................................... 12

15 U.S.C. § 1064(3) ........................................................................................................ 3

15 U.S.C. § 1092 .......................................................................................................... 12

15 U.S.C. § 1125(a) ...................................................................................................... 10

15 U.S.C. § 1125(c) ................................................................................................. 12, 13

15 U.S.C. § 1125(d) ........................................................................................................ 8

15 U.S.C. § 1126 .................................................................................................... passim

28 U.S.C. § 1404(a) ........................................................................................................ 4

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition, § 29:4 (4th ed.) ....................................... 10

5 McCarthy on Trademarks and Unfair Competition, § 5:11 (4th ed.) ....................................... 10

Article 6bis to the Paris Convention for the Protection of Industrial Property,
Mar. 20, 1883, as rev. at Stockholm, July 14, 1967,
21 U.S.T. 1583, 828 U.N.T.S. 305 .............................................................................. passim

Article 8 of the General Inter-American Convention for Trade Mark
and Commercial Protection of Washington, 1929, 46 Stat. 2907 ............................................ 2

Article V of the Convention for the Protection of Commercial, Industrial and Agricultural
Trade Marks and Commercial Names of Santiago, 1923, 44 Stat. 2494 .................................. 2

Gilson LaLonde, Anne, "Don't I Know You From Somewhere?
Protection In The United States Of Foreign Trademarks That Are Well Known But Not Used
There," 98 Trademark Rep. 1379 (2008) .................................................................. 7, 10, 16

## INTRODUCTION

There is no cause of action for cancellation of a mark under Article *6bis* of the Paris Convention.  Every Circuit Court that has addressed this issue has agreed that Sections 44(b) and (h) of the Lanham Act do not provide a purportedly famous foreign mark holder with a cause of action under Article *6bis*.  Bayer Consumer Care AG's ("Bayer CC AG") Counterclaim under Article *6bis* therefore, must be dismissed because, as a matter of law, Article *6bis* does not provide an independent cause of action.  Because granting such a cause of action to a foreign mark holder would be a drastic departure from the principle of territoriality in United States' trademark law, courts have declined to read a cause of action under Article *6bis* into the Lanham Act absent explicit action of and guidance from Congress.  Congress is able, and willing, to amend the Lanham Act, and indeed has done so ***approximately 30 times*** since its enactment in 1946.

Even if Bayer CC AG did have a cause of action, it has not pled, and cannot plead that its Mexican FLANAX mark is famous because it does not advertise or sell its product in the United States.  In particular, it cannot establish such fame prior to October 2003, Belmora LLC's ("Belmora") priority date, as it only began selling its FLANAX product in Mexico as an over-the-counter drug in 2002.  Accordingly, Bayer CC AG's Counterclaim should be dismissed with prejudice because it fails to state a claim upon which relief can be granted.

## BACKGROUND

Bayer CC AG has filed a petition to cancel and three amended petitions to cancel Belmora's registration for the FLANAX mark on various grounds.  Its Article *6bis* action made its first appearance in Bayer CC AG's Second Amended Petition, despite the ground accruing to Bayer CC AG, in theory, at the time of filing of its first petition.

1

## I.    Procedural Background

On *October 6, 2003*, Belmora filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the mark FLANAX for "Orally ingestible tablets of Naproxen Sodium for use as an analgesic," Application Serial No. 78/310,029 (the "'029 Application").   (Dkt. 1 at ¶ 13; Dkt. 35 ¶ 13.)  The USPTO issued the Registration for Belmora's FLANAX mark on February 1, 2005 as Registration No. 2924440. (Dkt. 1 at ¶15; Dkt. 35 ¶ 15.)

On June 29, 2007, three years after first being notified of Belmora's '029 Application, Bayer CC AG filed a Petition to Cancel Belmora's Registration No. 2924440 with the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB").  During the TTAB proceedings, Bayer CC AG filed four petitions to cancel Belmora's registration for the FLANAX mark over a period of two years.  It was not until Bayer CC AG's third petition, filed on August 28, 2008, that Bayer CC AG raised a claim under Article *6bis* of the Paris Convention.  The progression of Bayer CC AG's four petitions for cancellation are as follows:

- **June 29, 2007, Bayer CC AG's Petition for Cancellation**
  - o   Alleged violation of Section 2(d) of the Lanham Act.

- **September 17, 2007, Bayer CC AG's Amended Petition for Cancellation**
  - o   Alleged violation of Section 2(d) of the Lanham Act;
  - o   Alleged violation of Article 8 of the General Inter-American Convention for Trade Mark and Commercial Protection of Washington, 1929, 46 Stat. 2907; and
  - o   Alleged violation of Article V of the Convention for the Protection of Commercial, Industrial and Agricultural Trade Marks and Commercial Names of Santiago, 1923, 44 Stat. 2494.

2

- **August 28, 2008, Bayer CC AG's Second Amended Petition for Cancellation**

  o Alleged violation of Section 2(d) of the Lanham Act;

  o Alleged violation of Article *6bis* of the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as revised at Stockholm, July 14, 1967, 21 U.S.T. 1583; and

  o Alleged violation of Section 14(3) of the Lanham Act.

- **May 6, 2009, Bayer CC AG's Third Amended Petition**

  o Alleged violation of Section 14(3) of the Lanham Act.

Bayer CC AG's claim under Article *6bis* of the Paris Convention—which is the subject of its Counterclaim—was dismissed by the TTAB on April 6, 2009. (Dkt. 1 at Exhibit D.) The TTAB found that

> the Paris Convention is not self-executing. As such, Article *6bis* and *6ter* do not afford an independent cause of action for parties in Board proceedings. ... [W]hile Section 44 [of the Lanham Act] was 'generally intended' to implement elements of the Paris Convention, *In re Rath*, 402 F.3d at 1207, 74 USPQ2d at 1177, it does not, through subsections 44(b) or (h) or otherwise, provide the user of an assertedly famous foreign trademark with an independent basis for cancellation in a Board proceeding, absent use of the mark in the United States.

(*Id.* at pg. 11.)

On April 17, 2014, the TTAB granted Bayer CC AG's Third Amended Petition for Cancellation of Belmora's trademark Registration No. 2924440 for the FLANAX mark. (Dkt. 1 at Exhibit E.) The TTAB based its decision solely on Section 14(3) of the Lanham Act. (*Id.* at pg. 30.)

Pursuant to 15 U.S.C. § 1071, Belmora timely filed its appeal in the United States District Court for the Eastern District of Virginia. As discussed in Belmora's Motion to Dismiss Bayer CC AG and Bayer Healthcare LLC's ("Bayer Healthcare") Complaint, Bayer CC AG and Bayer

3

Healthcare filed an improper complaint for unfair competition and false advertising in the Central District of California. (Dkt. 37 at 3-5.) Bayer CC AG and Bayer Healthcare's complaint was transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) and consolidated with Belmora's pending appeal. (*Id.*)

## II.   Bayer AG CC's Counterclaim

On July 8, 2014, Bayer CC AG and Bayer Healthcare filed their Answer to Complaint and Counterclaim relating to the Eastern District of Virginia complaint filed by Belmora. (Dkt. 35.) The pleading included a counterclaim by Bayer CC AG, requesting judicial review of the TTAB's decision that Bayer CC AG does not have a right of action under Article *6bis* of the Paris Convention based on Sections 44(b) and (h) of the Lanham Act. (*Id.* at pgs. 18-22.)

## LEGAL STANDARD

### I.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement prevents "a plaintiff with 'a largely groundless claim' [from] tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 558. "In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true." *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted).

## II.     Article *6bis* of the Paris Convention

Under Article *6bis* of the Paris Convention for the Protection of Industrial Property,

members must:

> ex officio if their legislation so permits, or at the request of an interested party, to refuse or to cancel the registration, and to prohibit the use, of a trademark which constitutes a reproduction, an imitation, or a translation, liable to create confusion, of a mark considered by the competent authority of the country of registration or use to be well known in that country as being already the mark of a person entitled to the benefits of this Convention and used for identical or similar goods. These provisions shall also apply when the essential part of the mark constitutes a reproduction of any such well-known mark or an imitation liable to create confusion therewith.

Article *6bis* to the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as

rev. at Stockholm, July 14, 1967, 21 U.S.T. 1583, 828 U.N.T.S. 305.

## III.    Sections 44(b) And (h) Of The Lanham Act, 15 U.S.C. §§ 1126(b) And (h)

15 U.S.C. § 1126(b) of the Lanham Act is titled "Benefits of section to persons whose

country of origin is a party to convention or treaty," and provides:

> Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.

15 U.S.C. § 1126(h) of the Lanham Act is titled "Protection of foreign national against unfair

competition," and provides:

> Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

## ARGUMENT

**I.    Bayer CC AG's Counterclaim Should Be Dismissed Because There Is No Cause Of Action Under Article 6*bis* Of The Paris Convention**

Bayer CC AG's Counterclaim fails to state a claim upon which relief can be granted because Article 6*bis* does not create an independent cause of action.  Bayer CC AG contends that the TTAB's dismissal of its Article 6*bis* claim was erroneous, and that it should be allowed "to proceed with its well-known marks claim under Article 6*bis* of the Paris Convention."  (Dkt. 35 at ¶ 29.)  It alleges that it has a cause of action under Article 6*bis* based on Section 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h).  Every Circuit Court to consider the issue has rejected Bayer CC AG's Article 6*bis* argument.  And, as discussed below, the Fourth Circuit has rejected Bayer CC AG's reading of Sections 44(b) and (h).  *See Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir. 1992).  In cases involving other provisions of the Lanham Act, the Fourth Circuit could have, but did not, give effect to Article 6*bis* as an independent cause of action or give it effect in any other manner.  Accordingly, Bayer CC AG's Counterclaim should be dismissed with prejudice.

### A.  Article 6*bis* Of The Paris Convention Is Not Self-Executing

Although Bayer CC AG does not allege in its Counterclaim that Article 6*bis* is self-executing, it is logical to consider the issue as a threshold inquiry.  Indeed, the TTAB considered this question and made an explicit finding that the Paris Convention is not self-executing.  (Dkt. 1 at Exhibit D, pg. 11.)  Bayer CC AG could not challenge this finding in good faith, as recent case law makes clear that the Paris Convention is **not self-executing**.  *See, e.g. In re Rath*, 402 F.3d 1207, 1209 (Fed. Cir. 2005) ("[T]he Paris Convention is not a self-executing treaty and requires congressional implementation."); *Int'l Finance Corp. v. Bravo Co.*, 2002 WL 1258278 at *7, 64 U.S.P.Q.2d 1597, 1603 (TTAB June 5, 2002) ("[T]he Paris Convention is not self-

executing. As such, Articles 6*bis* and 6*ter* do not afford an independent cause of action for parties in Board proceedings."); *In re The Government of the District of Columbia*, 2012 WL 423804 at *8, 101 U.S.P.Q.2d 1588 (TTAB Jan. 18, 2012) ("First, the Paris Convention is not self-executing, so we must look for authority to whatever provisions Congress has made in implementing the treaty, and the treaty itself creates no rights that can be directly relied upon by applicants in the United States."); *Scimed Life Sys., Inc. v. Medtronic Vascular, Inc.*, 468 F. Supp. 2d 60, 67 n.6 (D.D.C. 2006) ("The Paris Convention is not self-executing and, therefore, the U.S. was free to implement the Paris Convention in the manner and form that Congress deemed appropriate."); *Almacenes Exito S.A. v. El Gallo Meat Market, Inc.*, 381 F. Supp. 2d 324, 327 n.4 (S.D.N.Y. 2005) ("Plaintiff makes no argument that, independent of the Lanham Act, the provisions of the Paris Convention on which it relies are self-executing and provide a basis for bringing suit in the United States. Even the Ninth Circuit, which recognized a limited cause of action for the famous marks doctrine under the Lanham Act, *see infra,* expressly rejected such an argument, holding that 'the Paris Convention creates neither a federal cause of action nor additional substantive rights.'") (citation omitted); Gilson LaLonde, Anne, "Don't I Know You From Somewhere? Protection In The United States Of Foreign Trademarks That Are Well Known But Not Used There," 98 Trademark Rep. 1379, 1391-92 (2008) (citing cases and legislative history that show that the Paris Convention is not self-executing).

Because Article 6*bis* is not self-executing, Bayer CC AG contends that it is implemented by Sections 44(b) and (h) of the Lanham Act. For the reasons set forth below, this argument must be rejected.

### B. Every Circuit Court To Consider The Issue Has Found That Sections 44(b) And (h) Of The Lanham Act Do Not Make Article *6bis* Of The Paris Convention "Applicable"

The Fourth Circuit has made clear that "[i]t follows from incorporation of the doctrine of territoriality into United States law through Section 44 of the Lanham Act that United States courts do not entertain actions seeking to enforce trademark rights that exist only under foreign law." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 628 (4th Cir. 2003) (interpreting Section 43(d) of the Lanham Act).   In *Barcelona.com*, the court recognized that the rights conferred by the Paris Convention do not exceed those provided in the Lanham Act and that "the Paris Convention creates nothing that even remotely resembles a 'world mark.'" *Id.* (citation omitted); *see also Scotch Whisky*, 958 F.2d at 597 (4th Cir. 1992) ("[V]is-a-vis trademark protection under the Paris Union Convention gives no greater protection than that already provided by section 43(a) of the Lanham Act.").   With respect to Article *6bis* of the Paris Convention, the District of Maryland has explained that the Fourth Circuit takes a "narrow[] view of the effect of [Article *6bis*]." *Maruti.com v. Maruti Udyog Ltd.*, 447 F. Supp. 2d 494, 501 (D.Md. 2006) (rejecting the argument that Article *6bis* of the Paris Convention requires protection of famous marks under the Lanham Act); *see also Rosenruist-Gestao E Servicos LDA v. Virgin Enterp. Ltd.*, 511 F.3d 437, 440 n.1 (4th Cir. 2007) ("This requirement reflects the fundamental principle in American trademark law that ownership rights flow from actual use of the mark in commerce.").

Bayer CC AG's argument that Sections 44(b) and (h) of the Lanham Act make Article *6bis* of the Lanham Act "applicable" was explicitly rejected by the Second Circuit in *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007), *cert. denied*, 128 S.Ct. (2007).  *See Punchgini*, 482 F.3d at 172 ("[P]laintiff cannot assert a successful federal claim for unfair competition because

8

Congress has not incorporated the substantive protections of the famous marks doctrine set forth in Paris Convention Article *6bis* … into the relevant federal law, and this court cannot recognize the doctrine simply as a matter of sound policy."). In *Punchgini*, the Second Circuit found that such an argument was at odds with the well-established principles of territoriality and that "the Paris Convention creates no substantive United States rights beyond those independently provided in the Lanham Act." *Id.* at 162-64. From a statutory construction perspective, the Second Circuit stated that "we do not ourselves discern in the plain language of sections 44(b) and (h) a clear congressional intent to incorporate a famous marks exception into federal unfair competition law." *Id.* at 163. Because "Congress has not hesitated to amend the Lanham Act to effect its intent with respect to trademark protection, having done so almost thirty times since the statute took effect in 1947[,] … the absence of any statutory provision expressly incorporating the famous marks doctrine or Articles *6bis* and 16(2) is all the more significant." *Id.* at 164. The court declined to make "such a significant departure from the principle of territoriality" without an express showing of intent from Congress. *Id.*; *see also Almacenes Exito*, 381 F. Supp. 2d at 327-28 ("So, plaintiff's argument goes, the Lanham Act provides a foreign plaintiff with additional substantive rights created by the Paris Convention. So far as the Second Circuit is concerned, however, any argument along these lines has effectively been rejected …"). In dismissing Bayer CC AG's Article *6bis* claim, TTAB relied on the Second Circuit's well-reasoned opinion in *Punchgini*. (Dkt. 1 at Exhibit D, pgs. 11-13.)

Even the Ninth Circuit in *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004) found that "the Paris Convention creates neither a federal cause of action nor additional substantive rights." *See also Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277-78 (11th Cir. 2001) ("But we disagree that the Paris Convention

creates substantive rights beyond those independently provided in the Lanham Act. As other courts of appeals have noted, the rights articulated in the Paris Convention do not exceed the rights conferred by the Lanham Act. ... But the Paris Convention, as incorporated by section 44 of the Lanham Act, creates no new cause of action for unfair competition. Any cause of action based on unfair competition must be grounded in the substantive provisions of the Lanham Act."); *Punchgini*, 482 F.3d at 163-64.[1]

The *Grupo* decision issued in 2004 and the *Punchgini* decision issued in 2007. Despite these decisions and the clear indication from the Second Circuit in *Punchgini* to Congress that it would not grant protection to foreign trademark holders under the famous marks exception without a clear intent from Congress, Congress has not amended the Lanham Act to include any such protections. Indeed, the Lanham Act has been amended several times since these decisions, without reference to such a protection for foreign mark holders. *See* 5 McCarthy on Trademarks and Unfair Competition, § 5:11 (4th ed.) (detailing the amendments to the Lanham Act since 2000, including two amendments in 2008 and one amendment in 2010).[2]  Congress is the appropriate entity to clarify this issue. *See Halbig v. Burwell*, No. 14-5018, 2014 WL 3579745,

---

[1] It is one commentator, J. Thomas McCarthy's, view that Article *6bis* is incorporated into United States law through Sections 43(a), 44(b) and 44(h) of the Lanham Act. *See* 5 McCarthy on Trademarks and Unfair Competition, § 29:4 (4th ed.); *but see* Gilson LaLonde, Anne, "Don't I Know You From Somewhere? Protection In The United States Of Foreign Trademarks That Are Well Known But Not Used There," 98 Trademark Rep. 1379, 1400 (2008) (describing the "argument in favor of finding a federal statutory right to enforce the reputation alone of a well-known foreign mark in Section 44" as "a stretch" because "such an extensive grant of rights [should] be spelled out more specifically"). No Circuit Court has adopted Professor McCarthy's view.

[2] After the *Punchgini* decision in 2007, "the International Trademark Association (INTA) began planning for a legislative amendment in U.S. law." 5 McCarthy on Trademarks and Unfair Competition, § 29:4 (4th ed.). In May 2011, the "INTA Board of Directors adopted a resolution in support of amending U.S. law to provide an explicit basis for the well-known marks doctrine." *Id.* at n.30.50. Over three years have passed, and Congress has declined to make such a change to the Lanham Act.

at *17 (D.C. Cir. July 22, 2014) (holding that despite its decision having "significant consequences," "the principle of legislative supremacy that guides [the court] is higher still. Within constitutional limits, Congress is supreme in matters of policy, and the consequence of that supremacy is that [the court's] duty when interpreting a statute is to ascertain the meaning of the words of the statute duly enacted through the formal legislative process. This limited role serves democratic interests by ensuring that policy is made by elected, politically accountable representatives, not by apointed, life-tenured judges.").

Bayer CC AG argued before the TTAB that Section 44(b) implements Article *6bis* through its use of the phrase "in addition to." (*Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 92047741 at Dkt. 22, pg. 7-8, 10-11 & n.6.) Circuit Courts have considered this argument time and time again, and all have uniformly rejected such a reading of Section 44(b). As the Federal Circuit made clear, while some provisions of the Paris Convention have been implemented by Section 44 of the Lanham Act, 15 U.S.C. § 1126, "this does not mean that Congress intended [to implement the Paris Convention through Section 44] in every respect or that it actually accomplished that objective in all respects or that it correctly understood the requirements of the Paris Convention in enacting section 44." *In re Rath*, 402 F.3d at 1211.

Furthermore, bear in mind that the individual Articles of the Paris Convention deal with either patents or trademarks, or with the case of Articles 4, 5, and 11, for example, both patents and trademarks. Thus, it is not logical to interpret Congress's intent in drafting Section 44 as wanting to incorporate the Paris Convention in its entirety, leaving courts without guidance as to how to filter from the Articles the applicable trademark-only provisions. The most sensible interpretation is that Congress, through use of the phrase "expressed herein" in Section 44(b), delineated the provisions that needed to be added, specifically Sections 44(d), (e) and (i).

11

Because, as a matter of law, there is no cause of action for cancellation under Article *6bis* in the Lanham Act, or otherwise, Bayer CC AG's must be dismissed.[3]

### C. Congress Amends The Lanham Act When It Creates New Grounds To Cancel Registrations

After enactment of the Federal Trademark Dilution Act in 1995, Congress explicitly amended Sections 13 and 24 of the Lanham Act in 1999 to permit the TTAB to cancel a registration based on dilution.   No such amendments to the Lanham Act have been made regarding allowing Article *6bis* to be a ground for contesting a registration.   To the extent Congress intended Article *6bis* to function as a cause of action for cancellation, it would have specifically said so.

### II.   Bayer CC AG Has Not, And Cannot, Properly Plead Priority Or The Requisite Level Of Fame Prior To 2003

Assuming, *arguendo*, that there is a cause of action under Article *6bis*, Bayer CC AG's Counterclaim should still be dismissed, as it is implausible that Bayer CC AG can establish that its Mexican FLANAX mark was a household name in the United States in 2003, when it had only been sold over-the-counter in Mexico for one year at that time.

While Belmora cannot properly evaluate Bayer CC AG's Article *6bis* pleading because it is not a recognized cause of action, its pleading is deficient when viewed in light of analogous trademark statutes.   The most analogous trademark statute that requires pleading ownership of a famous mark is the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c).   To state a claim for dilution under the TDRA, the plaintiff must establish that it owns a famous mark that is distinctive prior to the defendant's adoption of the mark. *Louis Vuitton Malletier*

---

[3] Indeed, Bayer CC AG conceded to the TTAB that the Federal Circuit has not found that Section 44 of the Lanham Act and the Paris Convention provide a ground for *cancellation*. (*Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 92047741 at Dkt. 22, at pg. 9-10.)

*S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007); 15 U.S.C. § 1125(c)(1).

Under § 1125(c)(2):

> a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties. (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark. (iii) The extent of actual recognition of the mark. (iv) Whether the mark was registered under the Act of March 3, 1981, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2). For purposes of dilution, the owner of a famous mark can only enjoin another person's commercial use in commerce of a mark or trademark, if such use began *after the mark has become famous*. 15 U.S.C. § 1125(c)(1). That is, the famous mark holder must have priority over the junior user. *See, e.g., Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 171 (4th Cir. 2012) ("A threshold issue [under the FTDA], therefore, is whether the plaintiff's mark became famous, if at all, before the defendant began using the mark in commerce.").

The standard for determining whether a mark is famous under the TDRA is whether the trademark is a "household name." *Rosetta*, 676 F.3d at 172 (stating that showing that a mark is famous "is not an easy standard to achieve" and that protection will only be extended for marks that are a "household name"); *see also Chanel, Inc. v. Jerzy Makarczyk*, 110 U.S.P.Q.2d 2013, at *6 (TTAB May 27, 2014) ("A famous mark is one that has become a 'household name'.") (citation omitted). Requiring a high level of fame prevents the slippery slope of requiring United States courts to protect all worldwide marks just because some consumers in the United States may have come across such marks on the internet.

Using the pleading standards for fame under the TDRA as a guide, Bayer CC AG's pleading of fame under Article 6*bis* is deficient. First, Bayer CC AG's allegation that its

Mexican FLANAX mark is "well known in the United States" is a legal conclusion, not supported by sufficient factual allegations. The Supreme Court has indicated that courts are not required to accept such "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted).

Second, Bayer CC AG has not pled in its Counterclaim that it acquired fame in its Mexican FLANAX mark among United States consumers of pain relievers prior to October 6, 2003, the date Belmora filed its trademark application for the FLANAX mark in the United States. While Bayer CC AG may argue that its Second Amended Petition, filed in 2008, contained such allegations[4], Bayer CC AG has dropped such allegations, as they are not presented in either of its 2014 filings. (Dkt. 1 (14-cv-4433 (C.D. Cal.)); Dkt. 35.) The only allegation these 2014 filings contain regarding use of Bayer CC AG's Mexican FLANAX mark in the United States relate to illegal, gray market sales. (Dkt. 1 at ¶ 29 (14-cv-4433 (C.D. Cal.)); Dkt. 35 at pg. 20.) Such illegal sales are insufficient to establish priority or plead a claim that is facially plausible. (Dkt. 44 at 6-10.) Furthermore, upon information and belief, Bayer CC AG's Mexican FLANAX product was not sold as an over-the-counter product in Mexico until 2002. Therefore, Bayer CC AG has not pled, and cannot plead, that it has priority over Belmora.

Third, Bayer CC AG only pleads that it is well-known among a subset of the pain reliever market, *i.e.* Mexican-American consumers in the United States. (Dkt. 35 at pg. 19.) Such "niche fame" is insufficient to establish that Bayer CC AG's Mexican FLANAX mark is a "household name." *See, e.g., Field of Screams, LLC v. Olney Boys and Girls Community Sports Ass'n*, No. 10-327, 2011 WL 890501, at *9 (D.Md. Mar. 14, 2011) ("Fame in a 'niche' market is no longer enough to support a claim under the Trademark Dilution Revision Act."); *Luv N' Care, Ltd. v.*

---

[4] *See Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 92047741 at Dkt. 18, ¶¶ 1-4.

*Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 756-58 (S.D.N.Y. 2012) ("The more general allegations that plaintiffs products' 'designs, trademarks and/or trade dress have all become widely known throughout the United States and worldwide, and associated with Plaintiffs,' *id.* ¶ 23, and 'Plaintiffs' products are among the most popular and well known products in their industry, and their line of products is famous throughout the country and world,' *id.* ¶ 24, are conclusions, lacking factual references to the trademarks and trade dress in suit, and therefore do not support the allegation that the marks in suit are famous. At best, plaintiffs plead fame among baby product consumers. However, as courts have noted, the inclusion in the TDRA of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or geographic region.'") (internal and external citations omitted).

Finally, Bayer CC AG has not pled in its Counterclaim that it has sufficiently and lawfully advertised or sold its Mexican FLANAX product in the United States to support a claim for fame or priority. Because such advertising and sales would be illegal, as discussed in Belmora's Reply in Support of its Motion to Dismiss (Dkt. 44 at 6-10), Bayer CC AG cannot state a claim for relief that is plausible on its face with respect to its fame. Furthermore, it is well settled that foreign use is insufficient to establish trademark priority. *See, e.g., Person's Co. v. Christman*, 900 F.2d 1565, 1568 (Fed. Cir. 1990) ("In the present case, appellant Person's Co. relies on its use of the mark in Japan in an attempt to support its claim for priority in the United States. Such foreign use has no effect on U.S. commerce and cannot form the basis for a holding that appellant has priority here."). As one well-known commentator stated, "[t]he hurdle of showing fame is extremely high," and if a mark is not used in the United States, "it would be nearly impossible" to prove fame. Gilson LaLonde, Anne, "Don't I Know You From

Somewhere? Protection In The United States Of Foreign Trademarks That Are Well Known But Not Used There," 98 Trademark Rep. 1379, 1415 (2008). Thus, any amendment of Bayer CC AG's Counterclaim would be futile.

## CONCLUSION

For the foregoing reasons, Belmora respectfully request that the Court dismiss Bayer CC AG's Counterclaim in its entirety, with prejudice.

Respectfully submitted,

Dated: August 29, 2014

_____ /s/ _____
John N. Jennison (VSB No. 36,824)
JENNISON & SHULTZ, P.C.
2001 Jefferson Davis Highway, Suite 1102
Arlington, Virginia 22202-3604
Phone: (703) 415-1640
Fax: (703) 415-0788
John@JennisonLaw.com

Martin B. Schwimmer (admitted *pro hac vice*)
Lauren B. Sabol (admitted *pro hac vice*)
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Fax: (914) 288-0023
schwimmer@leasonellis.com
sabol@leasonellis.com

John L. Welch (admitted *pro hac vice*)
LANDO & ANASTASI, LLP
One Main Street, 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
jwelch@lalaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of August, 2014, I will file the foregoing

**BELMORA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BAYER**

**CC AG'S COUNTERCLAIM** with the Clerk of Court, using the CM/ECF system, which will

then send notification of such filing, to the following counsel for Bayer Consumer Care AG:

Phillip Barengolts
PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP
pbarengolts@pattishall.com
200 S. Wacker Drive, Suite 2900
Chicago, IL 60606

Robert J. Shaughnessy
bshaughnessy@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

_____/s/_____
John N. Jennison (VSB No. 36,824)
JENNISON & SHULTZ, P.C.
2001 Jefferson Davis Highway, Suite 1102
Arlington, Virginia 22202-3604
Phone: (703) 415-1640
Fax: (703) 415-0788
John@JennisonLaw.com