# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

BELMORA LLC,

        *Plaintiff,*

    v.

BAYER CONSUMER CARE AG and BAYER HEALTHCARE LLC,

        *Defendants-Consolidated Plaintiffs,*

    v.

BELMORA, LLC, JAMIE BELCASTRO, and DOES 1-10, inclusive,

        *Consolidated Defendants.*

Consolidated Civil Action No. 1:14-cv-847
ECF Case

## BELMORA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

   I.   Procedural Background ........................................................................................ 1

      A.  The TTAB's Order of April 6, 2009 – Motion to Dismiss Decision ........................... 1

      B.  The TTAB's Order of February 2, 2010 – Summary Judgment Decision .................... 2

      C.  The TTAB's Order of April 17, 2014 – Petition to Cancel Decision ........................... 2

   II.  Belmora's Appeal .............................................................................................. 3

   III.  Belmora's Pending Motions ................................................................................ 3

LEGAL STANDARD ...................................................................................................... 4

   I.   Judgment on the Pleadings .................................................................................. 4

   II.  *De Novo* Review Of A TTAB Decision .............................................................. 5

   III.  Section 14(3) Of The Lanham Act, 15 U.S.C. § 1064(3) ...................................... 5

ARGUMENT .................................................................................................................. 5

   I.   The TTAB Committed Reversible Error ............................................................... 6

   II.  There Is A Difference Between Standing And Having A Cause of Action ................... 8

   III.  Section 14(3) Of The Lanham Act Is Meant To Prevent Passing Off ........................ 9

   IV.  Section 14(3) Imposes A Trademark Use Requirement Because There Cannot Be A Source Represented Without At Least One Trademark Recognized By United States Law ............................................................................................................... 11

   V.  There Are No Exceptions To The Territoriality Principle ....................................... 12 ~~11~~

      A.  Article *6bis* Of The Paris Convention Is Not A Part Of United States Trademark Law 12

   VI.  To The Extent Bayer CC AG Has A Cause Of Action, It Is Implausible That It Could Establish Fame Of Its Mexican FLANAX Mark Prior To The Filing Date Of Belmora's Trademark Application In The United States ................................................... 12

CONCLUSION ............................................................................................................... 13 ~~12~~

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona,*
    330 F.3d 617 (4th Cir. 2003) ........................................................................ 9

*Bayer Consumer Care AG v. Belmora LLC,*
    Cancellation No. 9204774 ............................................................................ 2

*Galleon S.A. v. Havana Club Holdings, S.A.,*
    2004 WL 199225 (TTAB Jan. 29, 2004) .................................................... 10

*ITC Ltd. v. Punchgini, Inc.,*
    482 F.3d 135 (2d Cir. 2007) ........................................................................ 11

*Karoun Dairies, Inc. v. Karoun Daries, Inc.,*
    No. 08-cv-1521, 2010 WL 3633109 (S.D. Cal. Sept. 13, 2010) .................. 10

*Lamparello v. Falwell,*
    420 F.3d 309 (4th Cir. 2005) ...................................................................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S.Ct. 1377 (2014) ............................................................................... 8, 9

*Person's Co. v. Christman,*
    900 F.2d 1565 (Fed. Cir. 1990) ................................................................... 3

*Rush v. Colvin,*
    No. 3:13-cv-452, 2014 WL 791937 (Feb. 21, 2014) ................................... 4

*Swatch AG v. Beehive Wholesale, LLC,*
    739 F.3d 150 (4th Cir. 2014) ........................................................................ 5

**Statutes**

15 U.S.C. § 1052(d) ........................................................................... passim

15 U.S.C. § 1064(3) ........................................................................... passim

15 U.S.C. § 1071(b) .................................................................................. 5

15 U.S.C. § 1114 ...................................................................................... 9

15 U.S.C. § 1125(a) .................................................................................. 9

15 U.S.C. § 1125(a)(1)(A) ............................................................. 4, 9, 10, 11

15 U.S.C. § 1125(a)(1)(B) ................................................................................... 4, 9

15 U.S.C. § 1125(c) ................................................................................................ 9

15 U.S.C. § 1125 (d) .............................................................................................. 9

15 U.S.C. § 1127 .................................................................................................... 9

Fed. R. Civ. P. 12(c) .............................................................................................. 4

## Other Authorities

1 McCarthy on Trademarks and Unfair Competition, §§ 3.1-3.2 (4th ed.) ................................. 11

3 McCarthy on Trademarks and Unfair Competition, § 20:60 (4th ed.) ..................................... 10

Article *6bis* to the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as rev. at Stockholm, July 14, 1967, 21 U.S.T. 1583, 828 U.N.T.S. 305 ............................. passim

Davis, "Cancellation Under Section 14(3) For Registrant Misrepresentation of Source, 85 Trademark Rep. 67 (Jan.-Feb. 1995) ...................................................................... 10

## INTRODUCTION

Belmora appeals the TTAB's decision ordering cancellation of its United State Trademark Registration under Section 14(3) of the Lanham Act. The TTAB, in its pre-*Lexmark* decision, looked at Bayer CC AG's failure to use a mark in U.S. commerce through the narrow lens of standing, and in so-doing, erroneously excused Bayer CC AG's from the prerequisite element of its purported cause of action: ownership of a protectable trademark in the U.S., despite the fact that all false association claims under the Lanham Act require that plaintiff own a U.S. trademark. Bayer CC AG has admitted that it does not use the Mexican FLANAX trademark in US Commerce, and thus Bayer's petition to cancel must be dismissed.[1]

## BACKGROUND

This memorandum presupposes a familiarity with the basic facts of this consolidated lawsuit. In pertinent part, this motion is in support of Belmora's appeal of the TTAB's April 17, 2014 order cancelling Belmora's registration for the mark FLANAX pursuant to Section 14(3) of the Lanham Act, on the grounds that Belmora had misrepresented its product as Bayer CC AG's Mexican FLANAX product.

### I.    Procedural Background

#### A.  The TTAB's Order of April 6, 2009 – Motion to Dismiss

Belmora moved to dismiss Bayer CC AG's petition for cancellation, arguing that Bayer CC AG did not have standing to bring a Section 14(3) claim because it had made no use of the FLANAX mark in commerce. The TTAB denied the motion, noting that with regard to specificity of alleged bad acts, Bayer CC AG had met the heightened specificity necessary to distinguish a Section 14(3) "misrepresentation of source" claim from a Section 2(d) likelihood of

---

[1] As noted herein, Belmora has concurrently moved to dismiss Bayer's appeal of the rejection of different grounds for its petition, namely, Section 2(d) and/or Article 6*bis*.

confusion claim.  Further, the TTAB held that Bayer CC AG had met the standing requirement by pleading that it held a belief that it was being damaged by the bad acts.  Finally, the TTAB stated that:

> Although existing case law does not address *whether petitioner's alleged use is sufficient to support a claim* of misrepresentation of source, we find that at a minimum the claim is pled sufficiently to allow petitioner to argue for the extension of existing law.

(Dkt. 1, Ex. D at 15 (emphasis added).)  The order was silent as to the source of the existing law or the possible basis for any extension.[2]

### B.  The TTAB's Order of February 2, 2010 – Summary Judgment Decision

Belmora's motion for summary judgment as to Bayer's only remaining claim, the Section 14(3) claims, was also framed as an attack on standing.  The TTAB denied the motion because petitioner had "a reasonable belief that it is likely to be damaged by [Belmora's FLANAX] Registration." *Bayer Consumer Care AG v. Belmora LLC*, Cancellation No. 9204774 at Dkt. 43, pg. 12.  The issue of petitioner's failure to use the mark in the United States was discussed solely as an element of standing, and not in the context of whether Bayer CC AG's use was a basis for the claim - that issue was  merely mentioned in a footnote, quoting the prior order to the effect that Bayer CC AG was arguing for an extension of existing law.

### C.  The TTAB's Order of April 17, 2014 – Petition to Cancel Decision

After the dismissals of Bayer CC AG's Section 2(d),  Article *6bis,* and fraud claims with prejudice (noted above), only the Section 14(3) claim went to trial before the TTAB.  The TTAB found that Belmora had made misrepresentations identifying itself as the source of the Mexican product:

---

[2] The April 2009 Order dismissed with prejudice Bayer's Section 2(d), Article *6bis* and fraud actions. (Dkt. 1, Ex. D)

> Although the facts before us present a matter of first impression, they do not present a close case. The preponderance of the evidence before us readily establishes blatant misuse of the FLANAX mark in a manner calculated to trade in the United States on the reputation and goodwill of petitioner's mark created by its use in Mexico.

(Dkt. 1, Ex. E at 21.)   In distinguishing this case from the *Person's* case, the TTAB noted that "the reputation of the Mexican FLANAX mark does not stop at the Mexican border." (*Id.* at 20; *Person's Co. v. Christman*, 900 F.2d 1565 (Fed. Cir. 1990).)   However, there was no clear statement whether use of the mark was required.   There was no clear statement that Bayer CC AG's alleged "United States goodwill" satisfied such a use requirement.   There was no finding that any such alleged goodwill existed prior to October 2003—the date Belmora filed its trademark application for the FLANAX mark in the United States.

## II.   Belmora's Appeal

On July 8, 2014, Belmora timely filed a complaint in the Eastern District of Virginia against Bayer Consumer Care AG ("Bayer CC AG") seeking a *de novo* judicial review of the final TTAB decision.[3] (Dkt. 1.) Count I of Belmora's appeal requests a *de novo* judicial review of the TTAB's ruling that Bayer CC AG had standing and/or a cause of action to seek cancellation of Belmora's FLANAX mark and that Bayer [CC AG] had a claim for cancellation under Section 14(3) of the Trademark Act. (Dkt. 1 at ¶¶ 84-89.)   Count II of Belmora's appeal requests *de novo* review of the TTAB's decision that Belmora was using the FLANAX mark to misrepresent source, in violation of Section 14(3) of the Trademark Act.   (Dkt. 1 at ¶¶ 90-93.)

## III.   Belmora's Pending Motions

Including the present motion, Belmora has three motions pending before this Court that involve the same substantive issue of law: application of the territoriality principle in United

---

[3] Belmora's Complaint also asserts various declaratory judgments against Bayer CC AG and Bayer Healthcare LLC ("Bayer Healthcare") relating to its use of the FLANAX mark. These declaratory judgment counts are not at issue in the present motion for judgment on the pleadings.

States trademark law.[4]  The facts relating to each of these three motions are also the same. On August 7, 2014, Belmora filed a Motion to Dismiss Bayer CC AG and Bayer Healthcare's Complaint relating to Bayer CC AG and Bayer Healthcare's claims under Sections 43(a)(1)(A) and 43(a)(1)(B) of the Lanham Act, California state law, and California common law. (Dkt. 1 (14-cv-4433 (C.D. Cal.)); Dkt. 37.)  This motion is fully briefed, and oral argument was held on September 5, 2014. (Dkts. 36-38, 42-44.)

On August 29, 2014, Belmora filed a second Motion to Dismiss, relating to Bayer CC AG's Counterclaim, which sought to appeal the TTAB's decision that Bayer CC AG does not have a cause of action under Article 6*bis* of the Paris Convention.  (Dkt. 46.)  This motion is also fully briefed (Dkts. 45-47, 52-53, 54.)  The Court set a hearing for this motion for September 26, 2014.[5]

Bayer CC AG answered Belmora's Complaint on August 7, 2014.  (Dkt. 35.)  Because the pleadings are now closed relating to Belmora's Complaint, Belmora files the present motion for judgment on the pleadings relating to its requests for judicial review of the TTAB decision.

## LEGAL STANDARD

### I.   Judgment on the Pleadings

Fed. R. Civ. P. 12(c) provides that "a party may move for judgment on the pleadings … [a]fter the pleadings are closed—but early enough not to delay trial."  For purposes of a motion for judgment on the pleadings, "[t]he Court construes the allegations in favor of the non-moving party." *Rush v. Colvin*, No. 3:13-cv-452, 2014 WL 791937, at *1 (Feb. 21, 2014).

---

[4] Belmora notes that it has also moved to dismiss Defendants' Section 43(a)(1)(B) counterclaim on different grounds, namely that it is duplicate of, and properly decided under Section 43(a)(1)(A), and alternatively, lawful puffery.

[5] In a separately filed motion, Belmora is requesting adjournment of this hearing date by one week to October 3, 2014 because of the Rosh Hashanah holiday, and asking that this Court consolidate the hearing with the hearing for the present motion under Fed. R. Civ. P. 12(c).

## II.   *De Novo* Review Of A TTAB Decision

"In a § 1071(b) action, the district court reviews the record de novo and acts as the finder of fact. The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155-56 (4th Cir. 2014) ("[W]here new evidence is submitted, de novo review of the entire record is required because the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts.") (citations omitted).

## III.   Section 14(3) Of The Lanham Act, 15 U.S.C. § 1064(3)

Section 14(3) of the Lanham Act relates to the cancellation of trademark registrations. Under Section 14(3):

> A *petition to cancel a registration of a mark*, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by *any person* who believes that he is or will be damaged, including as a result of dilution under section 43(c), by the registration of a mark on the principal register established by this Act, or under the Act of March 3, 1881, or the Act of February 20, 1905:
>
> ...
>
> (3) ... *if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used*. ...

15 U.S.C. § 1064(3) (emphasis added).

## ARGUMENT

The TTAB committed reversible error by holding that Bayer CC AG's Mexican trademark constituted a protectable interest under the Lanham Act, regardless of whether its Mexican trademark allegedly had any "United States goodwill."

## I.   The TTAB Committed Reversible Error

The reversible error is evinced in the TTAB's holding regarding Section 14(3).[6]   In particular, the following statements of law demonstrate the TTAB's incorrect legal conclusions[7]:

1.   "Thus, in terms of standing, petitioner has shown that it has an interest in protecting its Mexican FLANAX mark.  If respondent is using the FLANAX mark in the United States to misrepresent to U.S. consumers the source of respondent's products as petitioner's Mexican products, it is petitioner who loses the ability to control its reputation and thus suffers ***damage***.  As we will explore in the next section, the record in this case clearly establishes that the reputation of the Mexican FLANAX mark does not stop at the Mexican border."  (Dkt. 1, Ex. E at 19-20 (emphasis added).)

2.   "The preponderance of the evidence before us readily establishes blatant misuse of the FLANAX mark in a manner calculated to trade in the United States on the reputation and goodwill of petitioner's mark created by its use in Mexico."  (Dkt. 1, Ex. E at 21.)

The TTAB's decision was based on its erroneous conclusion that Bayer CC AG had protectable goodwill from its Mexican trademark registration that could be protected under the Lanham Act.  This holding was in error, for the reasons explained in Belmora's Reply in Support of its Motion to Dismiss.  (Dkt. 44 (explaining why Bayer CC AG's ethereal goodwill in its Mexican trademark cannot be protected under the Lanham Act).)

The TTAB's final decision is likewise erroneous because it, in essence, resurrects Bayer

---

[6] Belmora is also appealing the TTAB's decision that Belmora used its FLANAX mark to misrepresent source, in violation of Section 14(3).  To the extent this Court finds that the TTAB committed reversible error in its analysis of whether Bayer CC AG has standing or a cause of action, Belmora's appeal regarding the factual findings of misrepresentation of source is moot.

[7] As noted above, this is a *de novo* appeal.  The pertinent sections of the TTAB's order are excerpted to identify the TTAB's improper analysis of Bayer CC AG's alleged protectable interest.

CC AG's Section 2(d) and Article *6bis* claims—which the TTAB had summarily dismissed. This error manifests itself in the TTAB's April 6, 2009 decision, where it denied Belmora's Motion to Dismiss Bayer CC AG's Section 14(3) claim. In that decision, the TTAB recognized that Bayer CC AG's Section 14(3) claim was not supported by any case law, and that recognizing such cause of action would be an "extension of existing law." (Dkt. 1, Ex. D at 15.) Section 14(3) uses the word "source" because it means something more than merely a trademark. If Section 14(3) said "trademark" rather than "source," then it would no different from, and duplicative of, Section 2(d).

Section 14(3) clearly imposes a higher burden of proof than Section 2(d) in that it requires proof of passing off, as opposed to proof of mere likelihood of confusion. It exists as a safety-valve in providing a remedy to an egregious case that would otherwise be subject to the five-year time bar applicable to Section 2(d) claims. r. Belmora questioned why a petitioner (Bayer) would subject itself to a higher standard despite being within the five-year window, Belmora argued that the Section 14(3) action was in effect an end-run around Bayer's failed 2(d) claim which had been dismissed because of Bayer's lack of use of the FLANAX trademark in the United States. The Board noted Section 14(3)'s higher standard in holding that the claim was not a 'masquerade' for a 2(d) claim. (Dkt. 1, Ex. D at 14.)

In fact, while the burden of proof with regard to passing-off was higher, the true end-run seems to have involved exploitation of the absence of explicit use of the word 'use' in Section 14(3), resulting in the Board adopting a lower standard with regard to use in commerce as a prerequisite element. As stated herein, all the other false association actions in the Lanham Act (Sections 2(d), 32, 43(a)(1)(A)) require that plaintiff own a protectable U.S. trademark, and there is no plausible argument why Section 14(3) would be interpreted differently.

That is, Section 14(3) cannot be used to masquerade improper Section 2(d) claim. As discussed *infra* and in Belmora's Motion to Dismiss Bayer CC AG's Counterclaim (Dkt. 46, 54), Bayer CC AG does not have a cause of action under Section 2(d) or Article *6bis*. And because Bayer CC AG's Mexican FLANAX mark cannot be a "source" within the meaning of Section 14(3), it cannot have a misrepresentation—of-source cause of action either. Therefore, under any theory, the TTAB's decision to cancel Belmora's FLANAX registration is incorrect.

## II.     There Is A Difference Between Standing And Having A Cause of Action

Bayer CC AG admits that it does not make use of its FLANAX mark in United States commerce.  (Dkt. 35 at ¶¶ 37-38, 45-48, 53-54, 56-61.)  It therefore does not have a cause of action under Section 14(3), regardless of its hypothetical, subjective belief that it may be damaged.  As discussed above, at the TTAB, Belmora framed the issue presented by Bayer CC AG's failure to use in commerce as one of standing and this improper framing produced an irrelevant answer.  In *Lexmark*, the Supreme Court recently clarified that the inquiry that courts might formerly label as one of standing - "does this particular plaintiff have a right to sue" – is better expressed as "does this person have a cause of action?"  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386-88 (2014).  By framing the question in the pre-*Lexmark* motion as standing, the TTAB, in effect, answered the first question.  It utilized the conventional definition of a party that has standing: any person who believes that he or she is likely to be damaged.  (Dkt. 1, Ex. E at 18-20.)  Justice Scalia characterizes this test as broad and not helpful if given a literal reading.  *Lexmark*, 134 S.Ct. at 1388.  Instead, in *Lexmark*, the Supreme Court looked to the nature of interests to be protected by the statute, and asks: "can this person allege an injury to the sort of interest that the Act protects."  *Id.*  A person who cannot allege such an injury **does not have a cause of action**.

What interests, then, are protected by the Lanham Act?   Trademarks used in commerce and the persons who thereby engage in United States commerce under trademarks.   Bayer CC AG admittedly does not use its Mexican FLANAX mark in the United States and owns no such trademark rights in this country. Therefore, it cannot allege an injury under the Lanham Act.

### III.   Section 14(3) Of The Lanham Act Is Meant To Prevent Passing Off

Section 45 of the Lanham Act, codified at 15 U.S.C. § 1127, provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

Justice Scalia in *Lexmark* quotes the statement of purpose and notes that with the exception of the false advertising prohibitions of Section 43(a)(1)(B), most of the enumerated causes of action in the Lanham Act relate to false association. *Lexmark*, 134 S.Ct. at 1389. Section 2(d) prohibits registration of an infringing mark. Section 14(3) prohibits misrepresentations of source. Section 32 prohibits infringement of a registered mark. Section 43(a) prohibits infringement of an unregistered mark. Section 43(c) prohibits dilution of a famous mark. Finally, Section 43(d) prohibits cybersquatting of a famous or distinctive mark.

As previously discussed in Belmora's motions to dismiss Bayer CC AG's Section 43(a)(1)(A) and "Section 2(d)/Article *6bis*" actions, in order to maintain a cause of action, the plaintiff must establish prior rights in a trademark protectable under the Lanham Act.[8]   The

---

[8] *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 628 (4th Cir. 2003) ("It follows from incorporation of the doctrine of territoriality into United States law through Section 44 of the Lanham Act that United States courts do not entertain actions seeking to enforce trademark rights that exist only under foreign law.").

territoriality principle manifests itself in the requirement that to be protectable, a mark must be used in commerce regulated by Congress.  As Section 14(3) clearly falls within the ambit of the Lanham Act's false association actions, a plaintiff's protectable "source" is circumscribed by the territoriality principle.

Section 14(3) allows for the cancellation of a registration if the registrant is using the registered mark "to misrepresent the source of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1064(3).  This provision of the Lanham Act is meant to prevent "passing off." *See, e.g.*, 3 McCarthy on Trademarks and Unfair Competition, § 20:60 (4th ed.) ("A cancellation claim for misrepresentation under § 14(3) requires a pleading that registrant deliberately sought to pass off its goods as those of petitioner."); *Karoun Dairies, Inc. v. Karoun Daries, Inc.*, No. 08-cv-1521, 2010 WL 3633109, at *10 (S.D. Cal. Sept. 13, 2010) ("A cancellation claim for misrepresentation under § 14(3) requires a pleading that registrant deliberately sought to pass off its goods as those of petitioner."); *Galleon S.A. v. Havana Club Holdings, S.A.*, 2004 WL 199225, at *23 (TTAB Jan. 29, 2004) ("We have stated in the past that application [of Section 14(3)] under the decisional law has … been limited to cases involving deliberate and blatant misrepresentation of source wherein the registration is merely a vehicle for the misuse rather than evidence of even a colorable ownership claim, and where the mark is intentionally displayed in such a manner as to facilitate passing off the goods as those of another.") (citation and internal quotations omitted); Davis, "Cancellation Under Section 14(3) For Registrant Misrepresentation of Source, 85 Trademark Rep. 67, 86 (Jan.-Feb. 1995) (stating that the purpose of the 1962 amendments relating to Section 14(3) was to inhibit "egregious passing off by registrants").

Because Section 14(3) is a passing off cause of action, it is of the same species as Section

43(a)(1)(A), an unfair competition provision. As the Second Circuit in *Punchgini* has explained, "[t]he Lanham Act's unfair competition protections … are cabined by the long-established principle of territoriality." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 163 (2d Cir. 2007).

**IV.    Section 14(3) Imposes A Trademark Use Requirement Because There Cannot Be A Source Represented Without At Least One Trademark Recognized By United States Law**

Bayer CC AG argued before the Board that Section 14 of the Act "imposes no use requirement, distinguishing it (and other provisions of the Act), from Section 2(d)." (Dkt. 1, Ex. E at 19.) Because Bayer CC AG quoted the language of Section 2(d), Belmora understands this to mean that Bayer CC AG is arguing that there is no use requirement because the words "used in the United States" is not specifically included in Section 14(3). The simplest rebuttal is to note that Section 43(a)(1)(A) has no reference to "use" by a plaintiff either, referring only to use by a defendant to create an association with "another person." Section 43(a)(1)(A) is interpreted as requiring that the plaintiff indeed make prior use of its trademark in United States commerce. *See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (To establish a claim under Section 43(a)(1)(A), a party must prove, *inter alia*, that "it possesses a mark").

Bayer CC AG's argument also ignores the essence of the action. Section 14(3) refers to use of a mark to represent a "source." Belmora acknowledges that passing-off may involve, as ancillary factors, the use of unprotectable elements, such as color and font, but at its core, a source can only be represented by indicators of origin. *See* 1 McCarthy on Trademarks and Unfair Competition, §§ 3.1-3.2 (4th ed.) ("[T]he role that a designation must play to become a 'trademark' is to identify the source of one seller's goods and distinguish that source from other sources."). Clearly, at least one indicator of origin has to be used for a source to function as a source at all.

## V.     There Are No Exceptions To The Territoriality Principle

Naturally, then, a plaintiff making a Section 14(3) action must use a trademark.  As discussed in Belmora's Motions to Dismiss Defendants' Complaint (Dkt. 37, 44) and Bayer CC AG's Counterclaims (Dkt. 46, 54), the mark must be used in United States commerce. The principle of territoriality governs every section of the Lanham Act that relates to the use of a mark? .  This principle has required for nearly a century that there always be a connection to the United States, namely trademark use, not a "disembodied goodwill."  Section 14(3) involves the misuse of a symbol or registration, so it needs to be "cabined" by the principle of territoriality. To find otherwise would be inconsistent with every other provision of the Lanham Act.

### A.   Article *6bis* Of The Paris Convention Is Not A Part Of United States Trademark Law

Bayer CC AG may again argue that it is excused from using its trademark in commerce by claiming protection under the fictitious well-known marks doctrine of Article *6bis*. However, as explained in Belmora's Motion to Dismiss Bayer CC AG's Counterclaim, Article *6bis* of the Paris Convention has not been implemented into United States Trademark law by Congress. (Dkt. 46; Dkt. 54.)  Therefore, the TTAB's holding relating to "reputation without use" cannot be supported by Article *6bis*.

### VI.   To The Extent Bayer CC AG Has A Cause Of Action, It Is Implausible That It Could Establish Fame Of Its Mexican FLANAX Mark Prior To The Filing Date Of Belmora's Trademark Application In The United States

Belmora incorporates by reference its discussion of the relevant market and Bayer CC AG's inability to establish the requisite level of fame in its Motion to Dismiss Bayer CC AG's Counterclaim.  (Dkt. 46; Dkt. 54.) In short summary, Belmora argues that were "reputation without use" to be considered as an exception to the territoriality principle, it is implausible that Bayer CC AG could establish that its FLANAX mark was well-known in the United States after

one year of over-the-counter sales in Mexico, and no advertising or sales in the United States.

## CONCLUSION

For the foregoing reasons, Belmora respectfully request that the Court grant judgment on the pleadings in Belmora's favor and find that the TTAB committed reversible error by cancelling Belmora's registration for the FLANAX mark under Section 14(3).

Respectfully submitted,

Dated: September 18, 2014

_____/s/_____
John N. Jennison (VSB No. 36,824)
JENNISON & SHULTZ, P.C.
2001 Jefferson Davis Highway, Suite 1102
Arlington, Virginia 22202-3604
Phone: (703) 415-1640
Fax: (703) 415-0788
john@JennisonLaw.com

Martin B. Schwimmer (admitted *pro hac vice*)
Lauren B. Sabol (admitted *pro hac vice*)
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Fax: (914) 288-0023
schwimmer@leasonellis.com
sabol@leasonellis.com

John L. Welch (admitted *pro hac vice*)
LANDO & ANASTASI, LLP
One Main Street, 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
jwelch@lalaw.com

*Attorneys for Plaintiff*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of September, 2014, I will cause to be served the

foregoing **BELMORA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR**

**JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)** by hand on

the following counsel for Bayer Consumer Care AG:

> Robert J. Shaughnessy
> bshaughnessy@wc.com
> WILLIAMS & CONNOLLY LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005

_____/s/_____
John N. Jennison (VSB No. 36,824)
JENNISON & SHULTZ, P.C.
2001 Jefferson Davis Highway, Suite 1102
Arlington, Virginia 22202-3604
Phone: (703) 415-1640
Fax: (703) 415-0788
john@JennisonLaw.com
