IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| BELMORA, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-cv-00847 |
| | ) |
| BAYER CONSUMER CARE AG, | ) |
| *et al.*, | ) |
| | ) |
| Defendants-Consolidated | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BELMORA, LLC, JAMIE BELCASTRO, | ) |
| & DOES 1-10, INCLUSIVE, | ) |
| *et al.*, | ) |
| | ) |
| Consolidated Defendants. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff-Consolidated Defendant Belmora's Motion for Summary Judgment and Defendant-Consolidated Plaintiff Bayer's Motion for Summary Judgment.

This case arises from Bayer's claims that Belmora's FLANAX trademark should be cancelled because Belmora deceived customers into thinking that its FLANAX brand of pain relief medicine is the same FLANAX brand under which Bayer has sold pain relief

medicine in Mexico for decades. The Trademark Trial and Appeal Board ("TTAB") cancelled Belmora's trademark. Judge Gerald Lee of the Eastern District of Virginia reversed the TTAB's decision, which the Fourth Circuit reviewed, vacated, and remanded. The case is now remanded to this Court. The parties seek review of the TTAB decision and bring additional causes of action.

## I. Background

Belmora is a limited liability company formed in 2002. It is owned and operated by Jamie Belcastro. Belmora operates in the United States and sells over-the-counter pain relief products under the FLANAX brand name. Belmora began selling an analgesic naproxen sodium tablet in the United States as FLANAX in 2004. On October 6, 2003, Belmora filed an application with the United States Patent and Trademark Office ("PTO") to register the FLANAX mark for the analgesic tablets. The application was published for opposition on August 3, 2004, and the PTO issued the registration for the FLANAX mark on February 1, 2005.

Bayer Consumer Care AG, a Swiss Corporation, Bayer Healthcare LLC, a Delaware limited liability company, and predecessors have sold analgesics, pharmaceutical products, and anti-inflammatories in Mexico under the Mexican-registered

2

trademark FLANAX since the 1970s. Bayer does not possess a trademark for FLANAX in the United States.

Bayer attempted to register FLANAX in the United States in 2004 but the PTO rejected the application based on Belmora's preexisting efforts to register the mark. Bayer has sold hundreds of millions of dollars of FLANAX products in Mexico. Bayer promotes FLANAX in Mexico, including in major cities near the United States-Mexico border. The FLANAX brand is well-known in Mexico and other Latin American countries, as well as to Mexican-Americans and other Hispanics in the United States, but was never marketed or sold in the United States. Bayer has never received approval from the FDA to market or sell FLANAX in the United States.

Belmora's early packaging closely mimicked Bayer's Mexican FLANAX packaging, including a similar color scheme, font size, and typeface.[1] Belmora has since changed its packaging, but this modified scheme remains similar to that of Bayer's FLANAX. In addition to similar packaging, Belmora made statements implying that its FLANAX brand was the same FLANAX product sold by Bayer in Mexico. Belmora's marketing messages often suggested a historical connection between its FLANAX and Latino customers.

---

[1] The TTAB found that Belmora copied the logo and trade dress of Bayer's FLANAX. See Bayer Consumer Care AG v. Belmora LLC, 110 U.S.P.Q.2d 1623, 2014 WL 1679146,at *11 (T.T.A.B. 2014).

As of the mid-2000s, no manufacturer had obtained FDA approval to produce naproxen sodium in liquidgel form. As a result, naproxen sodium liquidgels were not available to U.S. customers. In 2007, Banner Pharmacaps ("Banner") received approval from the FDA to produce naproxen sodium liquidgels and entered into a supply agreement with Bayer. Bayer has since marketed Banner-manufactured naproxen sodium liquidgels to consumers under the ALEVE brand. In 2015, Banner sold its rights to the naproxen sodium liquidgels to Bionpharma. Bionpharma, as Banner's successor, was the only FDA approved source for naproxen sodium liquidgels. Bionpharma entered into a supply agreement with Bayer in January 2017. In addition to Bayer, Bionpharma supplies naproxen sodium liquidgels to national chains for private label sale.

Belmora alleges that a third party, PL Developments, agreed to package naproxen sodium liquidgels that Belmora would sell to consumers as a FLANAX branded product. As the only source of naproxen sodium liquidgels, PL Developments needed to obtain the liquidgels from Bionpharma. Belmora claims that when PL Developments approached Bionpharma and informed it that Belmora was the intended re-seller of the product, Bionpharma refused to supply the product.

Belmora also alleges that Bayer is involved in grey market product sales. Bayer de Mexico, which is not a party to this

4

lawsuit, lawfully sells FLANAX-branded naproxen sodium products in Mexico. It licenses use of the FLANAX trademark from Bayer Consumer Care AG. As the basis for its trademark infringement, unfair competition, and Tariff Act counterclaims, Belmora alleges that Bayer is involved in the importation and sale of Mexican FLANAX in the United States.

PROCEDURAL HISTORY

On June 29, 2007, Bayer petitioned the TTAB to cancel Belmora's registration for the FLANAX mark. Bayer argued that Belmora's use and registration of the FLANAX mark violated Article 6bis of the Paris Convention as made applicable by sections 44(b) and (h) of the Lanham Act, in addition to violating § 14(3) of the Lanham Act. Under § 14(3) of the Lanham Act, Bayer argued that Belmora used the FLANAX mark to misrepresent the source of the goods on which the mark was used.

The TTAB dismissed Bayer's Article 6bis claim but allowed the § 14(3) claim to proceed. In 2014, after discovery and a hearing, the TTAB issued a ruling canceling Belmora's FLANAX registration pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3). Bayer Consumer Care AG v. Belmora LLC, 2014 WL 1679146 (T.T.A.B. 2014). The TTAB concluded that Belmora had misrepresented the source of the FLANAX goods and that the facts "d[id] not present a close case." Id. at 32.  The TTAB went on to say that Belmora 1) knew the favorable reputation of Bayer's

5

FLANAX product, 2) "copied" Bayer's packaging, and 3)
"repeatedly invoked" that reputation when marketing its product
in the United States. Id. at 35

Following the TTAB's ruling, Bayer filed suit in the
Southern District of California alleging violations of the
Lanham Act as well as three claims under California state law.
See Bayer Consumer Care AG v. Belmora, LLC, No. 3:14-cv-01395
(S.D. Cal.). Shortly after, Bayer filed a notice of voluntary
dismissal because the "case was filed in the wrong district."
(Dkt. 37 at 3 n.2). On June 9, 2014, Bayer refiled its complaint
in the Central District of California.

Belmora appealed the TTAB's cancellation order and elected
to proceed with the appeal as a civil action in the Eastern
District of Virginia. Belmora argued that the TTAB erred in
concluding that Bayer had standing and /or a cause of action
under § 14(3) and in finding that Belmora had misrepresented the
source of its goods. Belmora also sought a declaration that its
actions had not violated the false association and false
advertising provisions of Lanham Act § 43(a) as alleged in
Bayer's California lawsuit. Bayer filed a counterclaim
challenging the TTAB's dismissal of its Paris Convention treaty
claims.

The Central District of California case was transferred and
consolidated with Belmora's pending action in the Eastern

District of Virginia. Belmora then moved to dismiss Bayer's §
43(a) and § 14(3) claims. On February 6, 2015, the district
court issued an opinion granting Belmora's motion. The district
court distilled the case into a single question of:

> Does the Lanham Act allow the owner of a foreign mark that
> is not registered in the United States and further has
> never used the mark in United States commerce to assert
> priority rights over a mark that is registered in the
> United States by another party and used in United States
> commerce?

Belmora LLC v. Bayer Consumer Care AG, 84 F. Supp. 3d 490, 495
(E.D. Va., 2015).

The district court concluded that "[t]he answer is no"
based on its reading of the Supreme Court's decision in Lexmark
Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377
(2014). The Court dismissed Bayer's false association and false
advertising claims for lack of standing and reversed the TTAB's
§ 14(3) cancellation order.

Following the district court's ruling, Bayer filed a timely
notice of appeal to the Fourth Circuit. The USPTO intervened to
defend the TTAB's decision to cancel Belmora's registration. The
Fourth Circuit vacated and remanded Judge Lee's decision, and
found that in applying the Lexmark framework, Bayer has standing
to bring its unfair competition claims under the Lanham Act §
43(a) and its cancellation claim under § 14(3). The Court ruled
that "the Lanham Act authorizes [Bayer] to bring its § 14(3)
action against Belmora" . . . and that "[Bayer's] cancellation
claim falls within the Lanham Act's zone of interests because it

confronts the 'deceptive and misleading use of marks'." Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 715 (4th Cir. 2016). The Court went on to say that "Bayer has also adequately pled a proximately caused injury to survive Belmora's Rule 12(c) motion" and that "the district court thus erred in reversing the TTAB's decision cancelling the registration of Belmora's FLANAX mark." Id.

Following remand from the 4th Circuit this case came back to the Eastern District of Virginia, this time in front of this Court following Judge Lee's retirement. On return to district court Belmora filed counterclaims against Bayer's claims that were consolidated from the California case. The Court now considers both Belmora and Bayer's motions for summary judgment. Belmora asks the Court to grant summary judgment and dismiss Bayer's five (5) claims. Bayer asks the Court to grant summary judgment and dismiss Belmora's seven (7) counterclaims, in addition to affirming the TTAB decision cancelling Belmora's FLANAX trademark registration for misrepresentation.

Belmora brings counterclaims against Bayer for (1) Registered Trademark Infringement under §§ 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 115(b); (2) Common Law Trademark Infringement; (3) Unfair Competition and False Designation of Origin in violation of the Lanham Act 15 U.S.C. § 1125(a) and common law; (4) Importation of Unauthorized Goods in

violation of § 526 of the Tariff Act of 1930 (as amended, 19 U.S.C. § 1526); (5) Importation of Infringing Goods in violation of the Lanham Act 15 U.S.C. § 1124; (6) Monopolization under Section 2 of the Sherman Act; and (7) Tortious Interference with Contract or Prospective Economic Advantage. Bayer brings claims against Belmora for (1) unfair competition under § 43(A) of the Lanham Act; (2) false advertising under § 43(a) of the Lanham Act; (3) unfair competition under Cal.Bus. & Prof. Code § 17200, et seq.; (4) false advertising under Cal.Bus. & Prof. Code § 17500, et seq.; and (5) unfair competition under the common law of California.

## II. Standard of Review

With respect to both Belmora and Bayer's claims and counterclaims a summary judgment standard is appropriate. Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of

9

material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

TTAB DECISION

Section § 1071(b) of Title 15 of the Unites States Code permits a party dissatisfied with a TTAB decision to appeal to the United States Court of Appeals for the Federal Circuit or to bring a civil action in federal district court. See 15 U.S.C. § 1071(a), (b). In a 1071(b) action, the district court reviews the record *de novo* and acts as the finder of fact. However, in some situations consideration of the TTAB decision is permitted. Kappos v. Hyatt, 132 S.Ct 1690, 1700 (2012), is instructive on this issue and is the primary case interpreting the patent and trademark civil action statutes. In Kappos, the Court adopted the Federal Circuit's rule that "the district court may, in its discretion, 'consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence.'" Id. at 1700 (quoting Hyatt v. Kappos, 625 F.3d 1320, 1335 (Fed.Cir.2010)).

In sum, any new evidence submitted to the court on a disputed factual question is considered *de novo*, Hyatt II, 132 S. Ct. at 1700, while factual findings made by the Board which are untouched by new evidence presented to the court are reviewed under the substantial evidence standard mandated by the Administrative Procedure Act, Hyatt I, 625 F.3d at 1336.

10

### III. Bayer's Claims

Bayer brings five (5) claims against Belmora. They include: 1) unfair competition under § 43(A) of the Lanham Act; (2) false advertising under § 43(a) of the Lanham Act; (3) unfair competition under Cal.Bus. & Prof. Code § 17200, et seq.; (4) false advertising under Cal.Bus. & Prof. Code § 17500, et seq.; and (5) unfair competition under the common law of California. The Court finds that each of these claims is barred by the applicable statute of limitations period for the reasons stated below.

Because the Lanham Act does not contain an express statute of limitations, the Court follows the traditional practice of borrowing the most analogous statute of limitations from state law. In this case, Bayer's Complaint was originally filed in federal court in California and was transferred to this district under § 1404(a). Transfers under § 1404(a) are merely accommodations to efficiency and convenience and do not affect substantive rights. Van Dusen v. Barak, 376 U.S. 612 (1964). Accordingly, Bayer's claims are governed by California law.

The Court turns first to Bayer's unfair competition claim under § 43(a)(1)(a)(count I). The limitations period runs from the time the [claimant] knew or should have known about its Lanham Act claims. See, e.g., Karl Storz Endoscopy America v. Surgical Tech, 285 F.3d 848, 857 (9th Cir. 2002). Courts in the

11

Ninth Circuit are split, however, over which "comparable" California statute applies to claims brought under the Lanham Act. One recent decision applied a three-year limitation based on the analogy to fraud. Small Axe Enters. V. Amscan, Inc., Case No. 16-cv-981, 2017 U.S. Dist. LEXIS 62900, at *10 (S.D. Cal. Apr. 24, 2017). Other decisions apply California's four-year period for state trademark infringement and unfair competition claims. See, e.g., Internet Specialites W., Inc. v. Milon-Digiorgio Enters., 559 F.3d 985, 990 n.2 (9th Cir. 2009).

Whether a three or four-year statute of limitations is applied in this case is immaterial. That is because Bayer's filing of this action misses the statute of limitations by almost a decade. There are at least six different dates that establish that Bayer knew or should have known of its Lanham Act rights. These include:

- The USPTO's issuance of a suspension letter on September 19, 2004 to Bayer's predecessor-in-interest citing Belmora's earlier '029 application;
- On May 16, 2005, the USPTO mailed Bayer's predecessor-in-interest an office action refusal of its '157 Application, citing Belmora's then-issued '440 Registration for the FLANAX mark.

- On June 13, 2006 Bayer's in-house counsel was aware of Belmora's use of the FLANAX mark in commerce as noted in Bayer's interrogatory responses;

- In February 2009 the USPTO registered Belmora's trademark for FLANAX;

- Email's between Bayer's in-house counsel on July 30, 2009; and

- On August 19, 2009 there was a TTAB deposition of Jamie Belcastro, at some point before which Bayer independently discovered a version of Exhibit B to their Complaint that contained the statements on which their Lanham Act claims are premised.

The Bayer Complaint was filed more than four years later then the time in which Bayer knew or should have known about its claims. Count I fails.

Bayer's claim for false advertising under § 43(a)(1)(b)(count II) is also barred under the statute of limitations. Federal courts apply California's three-year statute of limitations for fraud under Cal. Civ. Prooc. Code §338(d). See Baby Trend, Inc. v. Playtex Prods., LLC, 2013 U.S. Dist. LEXIS 113558 (C.D. Cal. 2013). For the same reasons set forth above, Bayer's second cause of action fails.

Turning to Bayer's California state law and common law claims for unfair competition and false advertising (counts III,

13

IV, V), the Court finds that these claims fail. These claims are based on the same set of facts as Bayer's federal claims.

Bayer's third cause of action seeks relief for unfair competition under Cal. Bus. & Prof. Code § 17200. Under Cal. Bus. & Prof. Code § 17208, such an unfair competition claim is governed by a four-year statute of limitations. Bayer waited far more than four years after receiving notice – legal, constructive or actual – before seeking relief under this statute.

Similarly, Bayer's fourth cause of action, for false advertising under Cal. Bus. & Prof. Code § 17500 is also barred, being subject to a three-year statute of limitations. See Free Kick Master LLC v. Apple Inc., 2016 U.S. Dist. LEXIS 25478, at *22 (N.D. Cal. 2016).

Finally, while courts are in disagreement as to whether California's limitation period for common-law unfair competition claims is two years or four years, there is no dispute that any such claim accrued more than four years before Bayer filed its Complaint in 2014.

For these reasons, the Court finds that Bayer's claims fail.

### IV. Belmora's Counterclaims

Belmora brings seven (7) counterclaims against Bayer. They are: (1)Registered Trademark Infringement under §§ 15 and 33(b)

14

of the Lanham Act, 15 U.S.C. §§ 1065 and 115(b); (2) Common Law

Trademark Infringement; (3) Unfair Competition and False

Designation of Origin in violation of the Lanham Act 15 U.S.C. §

1125(a) and common law; (4)Importation of Unauthorized Goods in

violation of § 526 of the Tariff Act of 1930 (as amended, 19

U.S.C. § 1526); (5) Importation of Infringing Goods in violation

of the Lanham Act 15 U.S.C. § 1124; (6) Monopolization under

Section 2 of the Sherman Act; and (7) Tortious Interference with

Contract or Prospective Economic Advantage. The Court finds that

Bayer is entitled to summary judgement on all of Belmora's

counterclaims.

Belmora's first through fifth counterclaims - for trademark

infringement, unfair competition, and Tariff Act violations -

are based on the same set of allegations - that Bayer allegedly

facilitated and is responsible for the unlawful importation and

sale of its Mexican FLANAX in the United States.

To hold Bayer liable for trademark infringement or unfair

competition (first, second, and third counterclaims), Belmora

must show that Bayer used FLANAX in a manner likely to cause

consumer confusion. Belmora, 819 F.3d at 708.

To hold Bayer contributorily liable, Belmora must show that

Bayer intentionally induced others to sell Bayer's Mexican

FLANAX in the U.S., or continued to supply its product to

someone whom it knew or had reason to know was unlawfully

selling it here. See Inwood Labs., Inc. v. Ives Labs., Inc., 456
U.S. 844, 854 (1982).

Belmora has not presented any evidence that Bayer has
offered Mexican FLANAX for sale in the U.S., that it has induced
others to sell the product in the U.S., or that it has continued
to supply the product to a party with knowledge or reason to
know that party was selling it in the U.S. Belmora merely
speculates that Bayer must have facilitated the sale of its
Mexican FLANAX because Bayer lawfully sells FLANAX in Mexico and
the product has made its way across the border. Mere speculation
is insufficient to survive a motion for summary judgment.
Counterclaims I, II, and III fail.

The Court now turns to the fourth and fifth counterclaims.
To prevail under § 526 of the Tariff Act (fourth counterclaim),
or § 1124 of the Lanham Act (fifth counterclaim), Belmora must
show that Bayer imported foreign products bearing the FLANAX
mark without Belmora's permission, or that Bayer knowingly or
with willful blindness induced one or more third parties to
import Bayer's Mexican FLANAX, or provided resources enabling
them to do so. 19 U.S.C. § 1526; 15 U.S.C. § 1124.

As noted in the preceding section, Belmora has no evidence
linking Bayer to the importation of Mexican FLANAX into the U.S.
Belmora simply alleges without any evidence regarding when, how,
where, or what Bayer allegedly imported, or to whom it provided

assistance. Mere conjecture is insufficient to survive a motion for summary judgment. Counts IV and V fail.

Belmora's sixth counterclaim is for monopolization under Section 2 of the Sherman Act. This claim revolves around Belmora's inability to obtain a supply of naproxen sodium liquidgels from Bionpharma, the sole FDA-approved U.S. source. Belmora claims that Bayer has monopoly power in the market for branded naproxen sodium and asserted pressure on Bionpharma not to sell the liquidgels to Belmora. Based on these allegations, Belmora asserts that Bayer has monopolized and maintained its monopoly in the market for branded naproxen sodium in violation of Section 2.

To prevail on a claim for monopolization under Section 2, a plaintiff must prove (1) the defendant's "possession of monopoly power in the relevant market," and (2) the defendant's "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. United States v. Grinnall Corp., 384 U.S. 563, 570-71 (1966); Cavalier Telephone, LLC v. Verizon Va., Inc., 330 F.3d 176, 183 (4th Cir. 2003).

Monopoly power is the "power to control prices or exclude competition," United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 391 (1956), and normally requires the defendant to possess a market share of 70% or more. R.J. Reynolds Tobacco Co.

Phillip Morris Inc., 199 F.Supp.2d 362, 394 (M.D.N.C. 2002),
aff'd, 67 F. App'x 810 (4th Cir. 2003)(per curiam). Thus, to
prove that the defendant possesses monopoly power, the plaintiff
must prove that there is a relevant market in which they possess
70% or more market share. See, Berlyn Inc. v. Gazette
Newspapers, Inc., 73 F.App'x 576, 582 (4th Cir. 2003).

      Defining markets for antitrust analysis is an extremely
complex task. Berlyn, Inc. v. Gazette Newspapers, Inc., 223
F.Supp.2d 718, 727 (D.Md.2002), aff'd, 73 F.App'x 576 (4th Cir.
2003). It is beyond the knowledge of a layperson to know whether
a set of products compete with each other in a single market.
That determination requires economic expertise. The Fourth
Circuit has recognized that the proponent of an antitrust claim
must present expert testimony to establish its proposed market
definition and that, without such testimony, the claim fails for
lack of competent evidence on an essential element. See,
Military Servs. Realty, Inc. v. Realty Consultants of Va, Ltd.
823 F.2d 829, 832 (4th Cir 1987)(affirming summary judgment where
plaintiff's experts could not "adequately identify the relevant
market").

      Here, Belmora alleges that the relevant market consists of
"branded naproxen sodium." It alleges that this market only
includes Bayer's Aleve and Belmora's FLANAX, and excludes
branded non-naproxen sodium products. Belmora's only economics

18

expert, Dr. Rausser, stated that his opinions do not include any opinion about the identification of the relevant market in this case. He also stated that he was not aware of what definition of the relevant market Belmora offered in its counterclaim. In the absence of expert testimony establishing the relevant market, Count VI fails.

Belmora's seventh counterclaim alleges tortious interference with contract or prospective economic advantage. This claim rests on the same allegations as the Section 2 claim that because Belmora could not obtain naproxen sodium liquidgels from Bionpharma, Belmora was unable to fill and had to cancel retail orders for FLANAX product.

To assert a claim for tortious interference with a contract a party must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove [the defendant's] knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference. Commerce Funding Corp. v. Worldwide Security Servs. Corp., 249 F.3d 204, 213 (4th Cir. 2001).

Count VII fails for a few reasons. First, there is no admissible evidence that Belmora had "orders" for FLANAX branded

19

naproxen sodium liquidgels or a reasonable expectation of
receiving any. Belmora's owner never had direct communications
between Belmora and a prospective customer about orders, rather
mere conversations with middlemen. Second, there is no evidence
that Bayer knew about the supposed orders, or was aware of
Belmora's interest in entering the naproxen sodium liquidgel
category. Finally, there is no evidence that Bayer used
"improper methods" to interfere with Belmora's prospective
economic advantage. Improper methods include "violations of
statutes [or] regulations," and "violence, threats, or
intimidation." Commerce Funding, F.3d at 214. There is simply no
evidence to adduce interference in this case. Claim VII fails.

### V. TTAB Decision

On April 17, 2014, the TTAB ordered that Belmora's FLANAX
trademark registration be cancelled based on misrepresentation
of source in violation of § 14(3) of the Trademark Act. The
Board made three findings that were critical to its decision.

First, the Board found that "[Belmora] was aware that the
FLANAX trademark was in use in Mexico in association with
naproxen sodium-based analgesics when it adopted the FLANAX mark
in the United States." Ex. 8, p.22. Second, the Board found that
Belmora copied Bayer's Mexican FLANAX packaging. Lastly, the
Board found that "[Belmora's] owner and agents repeatedly

invoked the reputation of [Bayer's] FLANAX mark when marketing [Belmora's] FLANAX products in the United States. Id. at 24.

Belmora has not adduced any new evidence that would require this Court to review the underlying evidence de novo. Belmora has not produced any credible new evidence that allow this Court to find that Mr. Belcastro was unaware of Bayer's Mexican FLANAX when he adopted the mark for his own company, that the parties' respective FLANAX packages did not actually look the way the Board said they did, or that the numerous examples of Belmora and its agents attempting to use Bayer's Mexican FLANAX goodwill were never published or used. Because Belmora has not offered any new evidence, and the Court finds that the Board's decision was not arbitrary, capricious, or otherwise not in accordance with law, this Court affirms the TTAB decision.

## VI. Conclusion

For the reasons mentioned, the Court concludes that Bayer's claims against Belmora fail but the TTAB decision is affirmed. Belmora's counterclaims against Bayer also fail. Summary judgement is granted for both parties and this case will be dismissed. An appropriate order shall issue.

Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September  6  , 2018